## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF NEW YORK

ANDREA SORRENTINO, D'ANGELO AND )
PATRICIA JACKSON, LOUIS APA, STEVEN )
ANDELMAN, PEEDO AND SAIFON PITUK, )
MANNY     DELMAS     AND     BARBARA )
LINDON, CHANDEEP SODHI, JASPRETT     )
SODHI, JACLYN TESORIERO, KIMBERLY  )
CILONE, MARIA VARALLO and                    )
HSIANGCHI HSU, individually and on behalf )
of themselves and all other persons similarly )
situated,                                                   )
                                                                )
                     Plaintiffs,                            )
                                                                )
            -against-                                       )
                                                                )
ASN ROOSEVELT CENTER LLC d/b/a       )
ARCHSTONE WESTBURY, ARCHSTONE    )
SMITH COMMUNITIES LLC, ARCHSTONE )
SMITH OPERATING TRUST, JOHN DOE     )
CORPORATIONS 1 THROUGH X,              )
                                                                )
                     Defendants.                          )

CV  08   0550

SPATT, J.

BOYLE, M.

## NOTICE OF REMOVAL

Defendants Archstone-Smith Operating Trust and Archstone-Smith Communities

LLC ("Archstone Operating Trust" and "Archstone Communities," collectively "the Removing

Defendants"), hereby give notice of the removal of this action from the Supreme Court of the State

of New York, County of Nassau, Index No. 07/021135, to the United States District Court, Eastern

District of New York, pursuant to 28 U.S.C. §§ 1332(d), 1446 and 1453.  Defendants base this

removal on the provisions of the Class Action Fairness Act of 2005 ("CAFA").  The grounds for

removal are as follows:

## I.   Procedural Background and Nature of the Action

1.   A putative class action was filed by plaintiff Andrea Sorrentino in the Supreme Court of the State of New York, Nassau County, on November 28, 2007, naming ASN Roosevelt Center LLC d/b/a Archstone Westbury ("Archstone Westbury") as the sole Defendant.  Archstone Westbury was served with the Class Action Complaint that same day.

2.   After Archstone Westbury moved to dismiss portions of the Class Action Complaint on December 14, 2007, but before Plaintiff responded to that motion, Plaintiff Sorrentino, along with numerous newly-added plaintiffs, filed their Amended Class Action Complaint on January 7, 2008.  All Defendants accepted service of the Amended Class Action Complaint on January 9, 2008.[1]

3.   The Amended Class Action Complaint added sixteen additional named plaintiffs and two additional named defendants – Archstone Operating Trust and Archstone Communities, the Removing Defendants – along with Doe Corporation Defendants I-X. (*See* Am. Compl. ¶¶ 4-13, 16-18).[2]

4.   Plaintiffs allege that Defendants are civilly liable under contract and tort theories of recovery related to water intrusion and apparent mold growth at Archstone Westbury, a 21-building apartment complex located in Nassau County, New York.  Plaintiffs complain that as residential

---

[1] Before the Removing Defendants' deadline to answer or otherwise respond to the Amended Class Action Complaint, Plaintiffs' counsel informed defense counsel that they intended to move to consolidate the Sorrentino action with two similar class action lawsuits filed by residents of Archstone Westbury, *Marchese, et al v. ASN Roosevelt Center LLC et al.*, Index No. 07/021745 and *Francois v. ASN Roosevelt Center LLC et al.*, Index No. 07/021967.  The Removing Defendants consented to the motion to consolidate.  As of the date of this removal, however, the consolidation order had not been signed.  In order to comply with the requirement of 28 U.S.C. § 1446(b) that an action be removed within 30 days of service, the Removing Defendants have removed this action individually.  However, they expressly reserve their arguments that the consolidated action would be removable after consolidation. *See In re Methyl Tertiary Butyl Ether Products Liability Litigation*, 399 F. Supp.2d 340, 349-55 (S.D.N.Y. 2005) (holding that consolidation of multiple cases merged them into one action and finding that timely removal as to one case timely removed entire consolidated proceeding).

[2] A copy of the Amended Class Action Complaint is annexed to the Declaration of Jennifer L. Noe, Exhibit A, Attachment 7.

tenants they were exposed to hazardous bacteria and mold at the complex, and that they suffered economic and other damages as a result of both water intrusion and the Defendants' termination of their residential leases necessitated by Defendants' need to repair and reconstruct the buildings at Archstone Westbury. (*See* Am. Compl. ¶¶ 1-2).

5.      Plaintiffs purport to bring their case pursuant to CPLR 901 as a class action on behalf of all others similarly situated. Their proposed class is defined to include "all tenants who lived at Archstone Westbury pursuant to leases with Defendants executed on or prior to November 27, 2007, and their successors in interest," excluding "any officer, director, member, partner, parent or subsidiary of Defendants." (Am. Compl. at ¶ 20).

6.      Plaintiffs allege five causes of action: Negligence (First Cause of Action); Breach of Covenant of Quiet Enjoyment (Second Cause of Action); Breach of Implied Warranty of Habitability (Third Cause of Action); Medical Monitoring (Fourth Cause of Action); Violations of New York General Business Law §349 - Deceptive Trade Practices (Fifth Cause of Action). Plaintiffs seek abatement of rents, actual and compensatory damages, "equitable relief" in the form of medical monitoring, prejudgment interest, attorneys' fees, and costs.

## II.      This Case is Removable Under the Class Action Fairness Act

7.      CAFA applies to civil class actions commenced on or after February 18, 2005. *See* CAFA § 9, Pub. L. No. 109-2 § 9, 119 Stat. 4, 14.

8.      Plaintiff Sorrentino filed her original Class Action Complaint on November 28, 2007, after the effective date of CAFA. Plaintiffs filed their Amended Class Action Complaint on January 7, 2008. As such, CAFA applies, and the Removing Defendants may remove this putative class action to federal court pursuant to CAFA so long as there are more than 100 proposed class members, minimal diversity exists between the parties and there is at least $5 million in controversy. *See* U.S.C. § 1332 (d)(2), (d)(5)(B) and (d)(d)(A).

**The Number of Proposed Class Members is Greater Than 100**

9.      Plaintiffs have filed the Amended Class Action Complaint on behalf of a proposed class consisting of "all tenants who lived at Archstone Westbury pursuant to leases with Defendant executed on or prior to November 27, 2007." (Am. Compl. ¶ 20.)

10.      Plaintiffs allege that there are more than 400 proposed class members: "The Class of Archstone Westbury tenants for whose benefit this action is brought is so numerous that joinder of all Class members is impracticable. At the time of the actions complained of herein, there were more than 400 tenants residing at the Archstone Complex." (Am. Compl. ¶ 21(a).) The requirement that the proposed class exceed 100 members is thereby satisfied on the face of Plaintiffs' Amended Class Action Complaint. *See* U.S.C. § 1332(d)(5)(B).

**Minimal Diversity Exists**

11.      The citizenship of the only plaintiff named in the original Class Action Complaint, Andrea Sorrentino, is currently unknown. (*See* Am. Compl. ¶ 3.) The new named plaintiffs who were added in the Amended Class Action Complaint are citizens of at least two states: New York and North Carolina.

(a)      Plaintiffs D'Angelo Jackson, Patricia Jackson, Louis Apa, Steven Andelman, Peedo Pituk, Saifon Pituk, Chandeep Sodhi, Jaspreet Sodhi, Jaclyn Tesoriero, Kimberly Cilone, and Hsiangchi Hsu are alleged to be current citizens of New York. (*See id.* at ¶¶ 4, 6, 7, 8, 10, 11, 13.)

(b)      The citizenship of plaintiffs Richard McCray, Tiara McCray, Manny Delmas, Barbara Lidon is currently unknown. (*See id.* at ¶¶ 5, 9.)

(c)      Plaintiff Marie Varallo is alleged to be a current citizen of North Carolina (*See id.* at ¶ 12.)

12.     The Removing Defendants are citizens of Maryland and Colorado and Delaware and Colorado, repectively.

(a)     A corporation is deemed to be a citizen of both the state of its incorporation and of the state where it has its principal place of business. *See* 28 U.S.C. § 1332(c)(1).  Under CAFA, the citizenship of an "unincorporated association" is both that of the state under whose laws it was organized and of the state where it has its principal place of business. *See* 28 U.S.C. §1332(d)(10).  Thus, post-CAFA, the tests for determining the dual  citizenship of a corporation and an unincorporated association are essentially the same -- both require an analysis of the organization's principal place of business.

(b)     The Second Circuit Court of Appeals has recognized two different tests for determining the principal place of business of a corporation, only one of which applies in this case. Where an organization is engaged in far-flung and varied activities which are carried on in different states, its principal place of business is the nerve center from which it radiates out to its constituent parts and from which its officers direct, control and coordinate all activities without regard to locale, in the furtherance of its objectives. *See Scot Typewriter Co. v. Underwood Corp.*, 170 F. Supp. 862, 865 (S.D.N.Y. 1959).  This is the "nerve center" test, which applies to both Removing Defendants in this action.

(c)     Defendant Archstone-Smith Operating Trust changed its name to "Archstone" on January 4, 2008. (*See* Declaration of Jennifer L. Noe, attached as **Exhibit A,** Attachment 1, ¶ 3.)  Archstone is a real estate investment trust organized under Maryland law. (*See id.*)  Archstone has no employees. (*See id.* at ¶ 4.)  It principally operates as a holding company and also owns a small number of real estate properties directly. (*See id.*)  Archstone's senior officers are based at 9200 E. Panorama Circle, Englewood, Colorado, and control company affairs

and policy from that location. (*See id.*)  Other Archstone officers are stationed in various offices located in eight major cities throughout the United States. (*See id.*)

        (d)      Based on these facts, Archstone is first a citizen of Maryland, the state under whose laws it was organized.  And because it has officers located in offices around the country, but all senior officers are based in Colorado and company affairs and policy are controlled from that location, Colorado is Archstone's principal place of business under the "nerve center test."  *See Scot,* 170 F. Supp. at 865 (determining that, because policy determinations and control of corporate affairs were carried out by executives in New York, New York was the defendant's principal place of business).  This fact is not contested, as Plaintiffs in fact allege that Archstone's principal place of business is Colorado. (*See* Am. Compl. ¶ 17.)

        (e)      Defendant Archstone-Smith Communities LLC changed its name to "Archstone Communities LLC" on January 4, 2008. (*See* Declaration of Jennifer L. Noe, Attachment 1, ¶ 5.)  Archstone Communities LLC is a limited liability corporation organized under Delaware law in October 2001 as a conversion of a Delaware corporation then known as Archstone Communities Incorporated. (*See id.*)  Archstone Communities LLC employs approximately 2,500 people engaged in the management and operation of some 200 properties across the United States as well as in various legal, accounting, tax, real estate investment and other activities. (*See id.* at ¶ 6.)  Archstone Communities LLC's senior officers are based at its principal office at 9200 E. Panorama Circle, Englewood, Colorado, and control company affairs and policy from that location. (*See id.*)  The largest number of its employees at any single location are also based at the Englewood, Colorado office, with others working "on site" at various branch offices and properties around the country. (*See id.*)

(f)     Based on these facts, Archstone Communities LLC is first a citizen of

Delaware, the state under whose laws it was organized.  And because Archstone Communities LLC

is engaged in varied activities and has employees throughout the country, but all senior officers are

based in Colorado and company affairs and policy are controlled from that location, Colorado is

Archstone Communities LLC's principal place of business under the "nerve center test."  *See Scot,*

170 F. Supp. at 865.  This fact is not contested, as Plaintiffs in fact allege that Archstone

Communities LLC's principal place of business is Colorado.  (*See* Am. Compl. ¶ 16.)

(g)     The minimal diversity requirement of 28 U.S.C. §1332(d)(2)(A) is therefore

satisfied.  While Plaintiff Varello is a citizen of North Carolina, no defendant is.  And even

assuming the remainder of the Plaintiffs are citizens of New York, neither of the Removing

Defendants is a citizen of New York.  Plaintiffs, in fact, admit this in their Amended Class Action

Complaint.

**The CAFA Amount in Controversy Requirement is Satisfied**

13.     Under CAFA, "the claims of individual class members *shall be aggregated* to

determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of

interest and costs." 28 U.S.C. § 1332(d)(6) (emphasis added).  CAFA's statutory history makes

clear that this aggregation rule must be applied liberally in favor of removal:

> Pursuant to new subsection 1332(d)(6), the claims of the individual
> class members in any class action shall be aggregated to determine
> whether the amount in controversy exceeds the sum or value of
> $5,000,000 (exclusive of interest and costs). *The Committee intends
> this subsection to be interpreted expansively.*  If a purported class
> action is removed pursuant to these jurisdictional provisions, *the
> named plaintiff(s) should bear the burden of demonstrating that the
> removal was improvident* (i.e., that the applicable jurisdictional
> requirements are not satisfied).
>
> By the same token, the Committee intends that a matter be subject to
> federal jurisdiction under this provision if the value of the matter in
> litigation exceeds $5,000,000 either from the viewpoint of the

plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief) . . . .

The Committee also notes that in assessing the jurisdictional amount in declaratory relief cases, the federal court should include in its assessment the value of all relief and benefits that would logically flow from the granting of the declaratory relief sought by the claimants.

S. Rep. No. 109-14, at 42-43 (2005) (emphasis added).

14.      Plaintiffs' aggregated claims exceed $5 million.

(a)      Plaintiffs seek to represent more than 400 Archstone Westbury tenants. (*See* Am. Compl. ¶ 21(a).)  Plaintiffs claim various injuries, including "actual or potential personal injury," and seek unspecified actual damages, compensatory damages, rent abatement and medical monitoring. (*See* Am. Compl. ¶ 50, Prayer for Relief.)  The amount at issue for all purported class members' claims easily exceeds $5 million.

(b)      Plaintiffs' rent abatement claims alone easily exceed the $5 million minimum.  There are 396 total residential rental units at the Archstone Westbury complex at issue. (*See* Declaration of Jennifer L. Noe, Attachment 1, ¶ 2.)  Plaintiffs seek abatements for apartments whose rents are alleged to range from $2,000 to $3,125 per month, with an average of $2,626 per month. (*See* Am. Compl. ¶¶ 3 through 13.)  Archstone Westbury residents were notified November 27, 2007, that they would have until March 31, 2008, to vacate their apartments.  Assuming that plaintiffs will seek rent abatements for just four months (December, January, February and March), then based solely on the average monthly rents alleged, the rent abatement requests for all 396 units amount to $4.2 million.  Defendants have received a demand letter on behalf of two Archstone Westbury tenants, however, who request full rent abatement for <u>28 months</u>, from August 2005 to November 2007. (*See* Declaration of Jennifer L. Noe, ¶ 3.)  Similar demands by other tenants, again based solely on the average monthly rents alleged, total $29.1 million in controversy for rent

abatement.  If the other tenants requested abatement for even half that time, $14.6 million would still be in controversy.

(c)     Plaintiffs' claims of "actual or potential personal injury" and requests for actual and compensatory damages bring the total amount in controversy even farther over the minimum.  The above-referenced demand letter from two Archstone Westbury tenants requests $100,000 in damages for rent abatement, moving and other expenses and emotional distress.  (*See id.*)  Similar demands by all 400 tenants would place at least $20 million in controversy, excluding any allocation for medical monitoring (which was not included in those particular tenants' demand but is sought by Plaintiffs in this putative class action).  Recent jury verdicts in two mold damage cases further demonstrate that aggregated monetary damages claims would easily exceed the jurisdictional minimum – one jury gave $133,000 to two homeowners and another gave $150,000 to a single condominium resident.  *See* West's Jury Verdicts – Massachusetts Reports, "Mold, Water Damage Cost Contractors $133K," 2007 WL 3342361 (discussing jury verdict based on plaintiffs' claims that construction work next to their home lead to water and mold damage and resulted in property and other monetary damages) (Declaration of Jennifer L. Noe, Attachment 2); West's Jury Verdicts – Massachusetts Reports, "Condo Resident Recoups $150K for Mold Damage," 2006 WL 4118521 (detailing jury verdict based on plaintiff's claims that condominium complex and property manager failed to properly repair roof, resulting in water and mold damage and leading to property damage and health problems) (Declaration of Jennifer L. Noe, Attachment 3).

(d)     Finally, Plaintiffs' claim for medical monitoring in the form of "ongoing diagnostic, curative and preventative medical care for illnesses related to mold exposure" places millions of dollars in controversy.  (Am. Compl. ¶ 63.)  A recent settlement agreement in a similar

case proposed $1.4 million for monitoring of a class of residents allegedly exposed to toxic substances. (*See* Declaration of Jennifer L. Noe, Attachment 4.)

       (e)     Accordingly, this case satisfies CAFA's amount in controversy requirement of $5 million.

### III.    Plaintiffs Will Be Unable To Show That Their Action Qualifies For a CAFA Exception

     15.    The Southern District of New York recently followed every Circuit Court of Appeals that has considered the issue in holding that it is the plaintiff's burden to prove that an exception to CAFA applies. *See Brook v. UnitedHealth Group Inc.*, No. 06-CV-12954, 2007 WL 2827808 at *3 (S.D.N.Y. Sept. 27, 2007) ("Circuit courts in other jurisdictions have all concluded that, once CAFA jurisdiction is established, the burden of proof to establish the existence of an exception rests with the party objecting to the court's exercise of jurisdiction.") (Declaration of Jennifer L. Noe, Attachment 5); *see also Serrano v. 180 Connect Inc.*, 478 F.3d 1018, 1023-24 (9th Cir. 2007) (holding party seeking remand must prove an exception to CAFA applies); *Evans v. Walter Indus. Inc.*, 449 F.3d 1159, 1164-65 (11th Cir. 2006) (same); *Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 545-46 (5th Cir. 2006) (same); *Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 679-81 (7th Cir. 2006) (same). Placing the burden on the party seeking remand to prove the applicability of one of the narrow exceptions to CAFA is consistent both with the statutory language of CAFA and its legislative history. *See Evans*, 449 F.3d at 1163-65; *Frazier*, 455 F.3d at 546; *Hart*, 457 F.3d at 681; *Brook*, 2007 WL 2827808 at *3.

     16.    If Plaintiffs move to remand this action based upon any exception to CAFA, including either the "home state" exception or the "local controversy" exception, they will be unable to prove that their case qualifies. Defendants expressly reserve their right to further brief this issue if and when Plaintiffs move to remand this case to state court on either ground.

## IV.   Defendants Have Complied With All Prerequisites for Removal.

17.   Removal is timely under CAFA and 28 U.S.C. § 1446(b), which give a removing party 30 days from service to remove an action to federal court.  The Removing Defendants were added as defendants and served with the Amended Class Action Complaint on January 9, 2008. Amendment of a complaint to add a new defendant starts a new case as to that defendant and makes the case removable as to that defendant if the other requirements for federal jurisdiction are satisfied. *See In re Methyl Tertiary Butyl* Ether *Prods. Liability Litig.*, No. 1:00-1898, MDL 1358, 2006 WL 1004725 at *4 (S.D.N.Y. Apr. 17, 2006) ("[W]here an amendment adds an entirely new defendant, the case may become removable as to that defendant") (Declaration of Jennifer L. Noe, Attachment 6); *see also Braud v. Transp. Serv. Co. of Illinois*, 445 F.3d 801, 806 (5th Cir. 2006) (finding new defendant had right to remove under CAFA and that "[Defendant's] addition 'changes the character of the litigation so as to make it substantially a new suit,' because as we explained, the addition of the new defendant commences the lawsuit as to it."); *Knudsen v. Liberty Mut. Ins. Co.*, 411 F.3d 805, 807-08 (7th Cir. 2005) (finding that if a new defendant were to be added in the future "it could enjoy a right to remove under the 2005 Act, for suit *against it* would have been commenced after February 18, 2005.").   When the Removing Defendants were added to the Amended Class Action Complaint, this case became removable as to them under CAFA through February 8, 2008.

18.   The consent of the remaining Defendants and of unserved (and unidentified) "Doe Corporation Defendants 1 through X" is irrelevant as CAFA has eliminated the requirement that all defendants consent to the removal of an action to federal court. *See* 28 U.S.C. § 1453(b).

19.   Pursuant to 28 U.S.C. § 1446(d), Defendants will give Plaintiffs contemporaneous written notice of this filing, and they will file a copy of this Notice of Removal with the Supreme Court of the State of New York, County of Nassau.

20.     Pursuant to 28 U.S.C. § 1446(a), copies of all processes, pleadings and orders served upon Defendants are attached.  (Declaration of Jennifer L. Noe, Attachment 7.)  This includes a copy of the summons, the Amended Class Action Complaint, and proof of service.

21.     Defendants reserve the right to amend or supplement this Notice of Removal, and they reserve all rights and defenses, including those available under Fed. R. Civ. P. 12.

22.     Defendants request a jury trial in this case.

## CONCLUSION

For all the reasons stated above, this action is a civil action over which this court has original jurisdiction pursuant to 28 U.S.C. § 1332(d).

**WHEREFORE**, Defendants respectfully remove this case to the United States District Court for the Eastern District of New York.

Dated: Mineola, New York
      February 8, 2008

WESTERMAN BALL EDERER
MILLER & SHARFSTEIN, LLP

BY: _____
    JENNIFER L. NOE (JN4100)
    WILLIAM E. VITA (WV1859)
170 Old Country Road, Suite 400
Mineola, NY 11501
(516) 622-9200
       and
PETER STRAND, ESQ.
DAVID THORNE, ESQ.
REBECCA J. SCHWARTZ, ESQ.
SHOOK HARDY & BACON, LLP
2555 Grand Boulevard
Kansas City, MO 64108-2613
*Attorneys for Removing Defendants*

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

ANDREA SORRENTINO, D'ANGELO AND)
PATRICIA JACKSON, LOUIS APA, STEVEN)
ANDELMAN, PEEDO AND SAIFON PITUK,)
MANNY    DELMAS    AND    BARBARA)
LINDON, CHANDEEP SODHI, JASPRETT   )
SODHI, JACLYN TESORIERO, KIMBERLY  )
CILONE, MARIA VARALLO and          )
HSIANGCHI HSU, individually and on behalf )
of themselves and all other persons similarly )
situated,                          )
                                )
          Plaintiffs,              )     Case No. _____
                                )
      -against-                    )
                                )
ASN ROOSEVELT CENTER LLC d/b/a     )
ARCHSTONE WESTBURY, ARCHSTONE      )
SMITH COMMUNITIES LLC, ARCHSTONE )
SMITH OPERATING TRUST, JOHN DOE    )
CORPORATIONS 1 THROUGH X,          )
                                )
          Defendants.              )

## DECLARATION OF JENNIFER L. NOE

     I, Jennifer L. Noe, an attorney duly admitted to practice before this Court, pursuant to 28 U.S.C. § 1746, hereby declare and state:

     1.    I am an associate with the law firm Westerman, Ball, Ederer, Miller & Sharfstein, LLP, defense counsel in the above-captioned action.  I am a member of the New York Bar and the bar of this Court.

     2.    I submit this declaration in support of Defendants Archstone-Smith Operating Trust and Archstone-Smith Communities LLC's Notice of Removal in order to put before the Court the following facts and the following attachments that are cited in Defendants' Notice of Removal.

3.      My clients received a demand letter, dated January 30, 2008, from two Archstone
Westbury tenants.  In the letter, the two tenants demand more than $100,000 in damages for rent
abatement, moving and other expenses and emotional distress.  Their rent abatement demands
concern full rent payments from August 2005 through November 2007.[1]

4.      Attached hereto as Attachment 1 is a true and correct copy of the Affidavit of
Thomas S. Reif, Associate General Counsel of Archstone-Smith Operating Trust and Archstone-
Smith Communities LLC.

5.      Attached hereto as Attachment 2 is a true and correct copy of an article entitled
"Mold, Water Damage Cost Contractors $133K," published in West's Jury Verdicts --
Massachusetts Reports, 2007 WL 3342361.

6.      Attached hereto as Attachment 3 is a true and correct copy of an article entitled
"Condo Resident Recoups $150K for Mold Damage," published in West's Jury Verdicts --
Massachusetts Reports, 2006 WL 4118521.

7.      Attached hereto as Attachment 4 is a true and correct copy of an article entitled
"$2 Million Illinois Settlement Establishes Medical Monitoring, Property Damage Class Funds,"
published in Mealey's Emerging Toxic Torts on February 5, 2008.

8.      Attached hereto as Attachment 5 is a true and correct copy of *Brook v.
UnitedHealth Group Inc.*, No. 06-CV-12954, 2007 WL 2827808 (S.D.N.Y. Sept. 27, 2007).

9.      Attached hereto as Attachment 6 is a true and correct copy of *In re Methyl
Tertiary Butyl Ether Products Liability Litigation*, No. 1:00-1898, 2006 WL 1004725 (S.D.N.Y.
Apr. 17, 2006)

---

[1] A copy of the January 30, 2008 demand letter is not attached because it contains confidential settlement
communications.  However, in the event the Court would like to review the letter, Defendants will provide a copy
for *in camera* inspection.

10.    Attached hereto as Attachment 7 are true and correct copies of all processes, pleadings and orders served upon Defendants in the Supreme Court of the State of New York, County of Nassau.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 8, 2008

Jennifer L. Noe (JN4100)

00078660.DOC

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

ANDREA SORRENTINO, D'ANGELO AND)
PATRICIA JACKSON, LOUIS APA, STEVEN)
ANDELMAN, PEEDO AND SAIFON PITUK,)
MANNY    DELMAS    AND    BARBARA)
LINDON, CHANDEEP SODHI, JASPRETT )
SODHI, JACLYN TESORIERO, KIMBERLY )
CILONE, MARIA VARALLO and )
HSIANGCHI HSU, individually and on behalf )
of themselves and all other persons similarly )
situated, )
                                   )

                Plaintiffs, )      Case No. _____
                                    )
      -vs.                            )
                                      )
ASN ROOSEVELT CENTER LLC d/b/a )
ARCHSTONE WESTBURY, ARCHSTONE )
SMITH COMMUNITIES LLC, ARCHSTONE )
SMITH OPERATING TRUST, JOHN DOE )
CORPORATIONS 1 THROUGH X. )
                                     )
               Defendants. )

## AFFIDAVIT OF THOMAS S. REIF

     State of Colorado         )
                            )
     County of Arapahoe     )

     BEFORE ME, the undersigned authority, on this day personally appeared Thomas S.

Reif, who, being by me duly sworn on oath, did upon his oath state as follows:

     1.     My name is Thomas S. Reif.  I am employed as the Associate General Counsel of

Archstone and of Archstone Communities LLC.  I am over eighteen years of age and otherwise

fully competent to execute this affidavit, and have personal knowledge of the facts set forth

herein.

2.      There are 396 total residential rental units at the Archstone Westbury complex in Nassau County, New York.

3.      Archstone-Smith Operating Trust changed its name to "Archstone" on January 4, 2008. Archstone is a real estate investment trust organized under Maryland law.

4.      Archstone has no employees. It principally operates as a holding company and also owns a small number of real estate properties directly. Archstone's senior officers are based at 9200 E. Panorama Circle, Englewood, Colorado, and control company affairs and policy from that location. Other Archstone officers are stationed in various offices located in eight major cities throughout the country.

5.      Archstone-Smith Communities LLC changed its name to "Archstone Communities LLC" on January 4, 2008. Archstone Communities LLC is a limited liability corporation organized under Delaware law in October 2001 as a conversion of a Delaware corporation then known as Archstone Communities Incorporated.

6.      Archstone Communities LLC employs approximately 2,500 people engaged in the management and operation of some 200 properties across the United States as well as in various legal, accounting, tax, real estate investment and other activities. Archstone Communities LLC's senior officers are based at its principal office at 9200 E. Panorama Circle, Englewood, Colorado, and control company affairs and policy from that location. The largest number of its employees at any single location are also based at the Englewood, Colorado office, with others working "on site" at various branch offices and properties around the country.

FURTHER, AFFIANT SAYETH NOT.

Thomas S. Reif
Associate General Counsel
Archstone and Archstone Communities LLC

Subscribed and sworn to before me, a notary public, this 16 day of February 2008.

Notary Public

My commission expires: 6|21|2011



# EXHIBIT 2

Westlaw.

2007 WL 3342361

2007 WL 3342361 (Mass.Super.)

Copyright (c) 2008 Thomson/West

WEST'S JURY VERDICTS - MASSACHUSETTS REPORTS

Mold, Water Damage Cost Contractors $133K

Superior Court of Massachusetts, Middlesex County.

**Martino v. Banwake LLC**

**Type of Case:**
Construction Defects • **Mold**
Construction Defects • **Soil/Grading/Foundations/Paving**
Construction Defects • **Defective Workmanship**
Real Property • **Trespass/Nuisance**
Real Property • **Damage**

**Specific Liability:** Negligence during construction of duplex homes resulted in water infiltration and **mold** damage to nearby residence

**General Injury:** Property damage, monetary damages

**Jurisdiction:**
State: Massachusetts
County: Middlesex

**Related Court Documents:**
Joint pretrial memorandum: 2004 WL 5292344
Plaintiffs' amended complaint: 2004 WL 5292343
Defendant Banwake's answer: 2007 WL 1210923
Verdict form: 2007 WL 1208801
Judgment: 2007 WL 1230832

**Case Name:** Anthony P. Martino and Helen P. Martino v. Banwake LLC, D.F. Valente, Edward J. Farrell, Nitro Dynamics and Greenwood & Sons Construction
**Docket/File Number:** CV2004-02698

**Verdict: Plaintiffs,** $133,000.00 against defendant Banwake

**Verdict Range:** $100,000 - 199,999

**Verdict Date:** Jan. 17, 2007

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Judge:** Merita A. Hopkins

**Attorneys:**
Plaintiffs: Scott M. Vaughn, Law Office of Scott M. Vaughn, Cambridge, Mass.;
Christopher J. Trombetta, Law Office of Christopher J. Trombetta, Mansfield, Mass.
Defendant (Banwake): Kevin Scanlon and Edward A. Prisby, Barron & Stadfeld, Boston,
Mass. Defendant (Greenwood & Sons): Richard Neumeier, Morrison Mahoney LLP, Boston,
Mass. Defendant (Valente): Dennis E. McMahon, Chestnut Hill, Mass. Defendant
(Farrell): Deborah Russo, Donovan/Hatem LLP, Boston, Mass.

**Trial Type:** Jury

**Experts:**
Plaintiffs: Charles R. Heuer, Esq, FAIA, architect, Mass.; Mark D. Kelley, PE,
hydrogeologist, Haley & Aldrich, Boston, Mass.; Andrew F. McKown, PE, Haley &
Aldrich, Boston, Mass.
Defendants: None mentioned

**Breakdown of Award:**
$146,000.00 to plaintiffs against defendant Banwake for negligence
$3,000.00 to plaintiffs against defendant Banwake for nuisance
Jury found plaintiffs failed to mitigate their damages by $16,000.00.

**Summary of Facts:**

In 2000 real estate developer Banwake LLC said it purchased three residential lots
in Wakefield, Mass., each with an existing house. The company began construction of
three duplexes on the lots and hired architect D.F. Valente, land surveyor Edward
J. Farrell, blasting company Nitro Dynamics and site contractor Greenwood & Sons
Construction to work on the project.

Homeowners Anthony and Helen Martino lived adjacent to the construction site, and
their property was reportedly on a lower elevation. Before work began, they claimed
their home was free of water damage. After Nitro performed blasting work and
Greenwood & Sons started construction, however, water penetrated the Martinos'
basement foundation and caused **mold** infestation, the couple said.

In a lawsuit against all five parties associated with the construction project, the
Martinos alleged the defendants failed to ensure the flow of water from the
worksite remained the same.

Valente failed to file required reports, the plaintiffs said, and failed to notify
the city building department that portions of the project did not conform to the
zoning ordinances.

The couple added there was no written contract between the defendants specifying
what work each would perform.

The Martinos sought to recoup their monetary losses.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Banwake admitted there was no written contract between it and the other defendants for the project. The company denied it caused the plaintiffs' claimed damages, adding it met the standard of care for a builder.

Farrell echoed Banwake's assertion regarding the standard of care.

The defendants reportedly added a claim that the Martinos were negligent in the maintenance of their driveway and/or home.

The case went before a jury and Judge Merita Hopkins in January 2007. Jurors awarded the Martinos $149,000 for Banwake's negligence and nuisance. The panel said the defendant did not prove the plaintiffs were negligent in the maintenance of their home or driveway, but determined the homeowners failed to avoid $16,000 worth of damage.

The jury found for Greenwood & Sons, Valente and Farrell.

Judge Hopkins affirmed the $133,000 award against Banwake, adding more than $41,000 in prejudgment interest.

Court: Superior Court of Massachusetts, Middlesex County.

2007 WL 3342361 (Mass.Super.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 3

Westlaw.

2006 WL 4118521

2006 WL 4118521 (Mass.Super.)

Copyright (c) 2008 Thomson/West

WEST'S JURY VERDICTS - MASSACHUSETTS REPORTS

Condo Resident Recoups $150K for Mold Damage

Superior Court of Massachusetts, Norfolk County.

**Bausemer v. O'Sullivan**

**Type of Case:**
Premises Liability • Mold
Premises Liability • Residential Property
Real Property • Damage
Real Property • Other

**Specific Liability:** Failure to properly repair and maintain condominium roof resulted in water accumulation and **mold** intrusion

**General Injury:** Aggravation of pre-existing asthma, breathing problems, sinus nose bleeds, fatigue, weight gain, depression, medical expenses

**Jurisdiction:**
State: Massachusetts
County: Norfolk

**Related Court Documents:**
Plaintiff's amended complaint: 2004 WL 4909921
Joint pretrial memorandum: 2005 WL 4658204
Defendants O'Sullivan and Zou's statement of undisputed facts: 2006 WL 2332226
Verdict form: 2006 WL 2332064
Defendants O'Sullivan and Zou's motion for JNOV or new trial: 2006 WL 2332228

**Case Name:** Beatrice M. Bausemer v. Maureen O'Sullivan and Yi Zou, trustees of the Jackson Park Condominium Association; and Kar Management Co.
**Docket/File Number:** CV2003-00911

**Verdict: Plaintiff,** $150,000.00 against defendants O'Sullivan and Zou

**Verdict Range:** $100,000 - 199,999

**Verdict Date:** May 18, 2006

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Judge:** Elizabeth B. Donovan

**Attorneys:**
Plaintiff: Herbert S. Cohen and Christopher W. McHallam, Boston, Mass.
Defendants (O'Sullivan and Zou): Lawrence J. Kenney Jr., Sloane & Walsh, Boston, Mass.
Defendant (Kar Management): None mentioned

**Trial Type:** Jury
**Breakdown of Award:**
$150,000.00 to plaintiff against defendants O'Sullivan and Zou in compensatory damages for property damage and **personal injuries**

**Summary of Facts:**

Beatrice M. Bausemer said she acquired a second-floor unit in the Quincy, Mass., Jackson Park Condominium complex in May 1998. During summer 2000 the complex and its property manager, Kar Management Co., failed to properly repair and maintain the roof directly above her unit, according to Bausemer.

As a result, water accumulated on the roof and began seeping into her unit, causing **mold** to form in the insulation in her ceiling and walls, Bausemer claimed. The presence of **mold** left the resident with health problems, she said, including aggravation of her pre-existing asthma, breathing problems, sinus nose bleeds, fatigue, weight gain and depression.

Seeking to recover for her injuries and medical expenses, Bausemer sued the trustees of the Jackson Park Condominium Association, Maureen O'Sullivan and Yi Zou, and Kar Management in the Norfolk County Superior Court.

The complaint stated the defendants were cited by the city of Quincy in July 2002 for violating the "minimum standards of fitness for human habitation" regarding water accumulation and **mold** intrusion in and around the plaintiff's unit. Despite the citation, Bausemer said, the defendants did not begin repairs until the following November.

Their negligence also led to the plaintiff's property damage, the lawsuit argued, requesting compensation for Bausemer's losses.

The plaintiff's second claim for breach of fiduciary duty against the condo association was reportedly dismissed prior to trial.

O'Sullivan and Zou denied any wrongdoing, arguing Bausemer's unit was timely repaired after the management company was notified about the water leak. The management company cleaned Bausemer's unit, the defendants said, and removed any alleged **mold**. The Quincy Board of Health approved the cleaning, the defendants added.

Considering the claims against O'Sullivan and Zou in May 2006, a Superior Court jury found all parties were at fault. Determining only the defendants' negligence caused Bausemer's injuries and property damage, the jury awarded the plaintiff

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2006 WL 4118521

$150,000 in compensatory damages. Judge Elizabeth B. Donovan affirmed the jury's findings and said Bausemer could recover her costs.

The defendants subsequently filed a motion for judgment notwithstanding the verdict or for a new trial. The Superior Court dismissed the motion in late June.

Court: Superior Court of Massachusetts, Norfolk County.

2006 WL 4118521 (Mass.Super.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 4

1 of 21 DOCUMENTS

Copyright 2008 LexisNexis, Division of Reed Elsevier Inc.
Mealey's Emerging Toxic Torts

February 5, 2008

*16-21 Mealey's Emerg. Toxic Torts 1 (2008)*

**SECTION:** Volume 16, Issue #21

**HEADLINE:** $2 Million Illinois Settlement Establishes Medical Monitoring, Property Damage Class Funds

**DATELINE:** PHILADELPHIA -

**BODY:**

A $2 million settlement agreement among the operator of a northern Illinois factory and a putative class of residents alleging exposure to trichloroethylene and vinyl chloride will be considered for preliminary approval at a Feb. 11 hearing in the U.S. District Court for the Eastern District of Pennsylvania (Glenn Gates, et al. v. Rohm & Haas Co., et al., No. 06-1743, E.D. Pa.; See 1/22/08, Page 16).

(Joint motion for preliminary approval of settlement with Modine Manufacturing Coavailable 15-080205-118M

Joint motion exhibits available 15-080205-019X

Plaintiff supplemental brief in support of settlement available 15-080205-020B

Order setting 2/11/08 settlement hearing available 15-080205-021R )

Modine Manufacturing Co. and class representatives Glenn and Donna Gates announced the agreement on Jan. 25. The parties also announced the settlement of nearly two dozen individual claims pending in the Philadelphia County Court of Common Pleas. The terms of the individual settlements are not available.

Continuing Litigation

The agreement does not affect the class claims pending against Rohm & Hass Co. and its subsidary, Morton International Inc., for chemical contamination (See the related class certification story below). The claims arise from exposure to the chemicals in the McCullom Lake Village neighborhood of McHenry, Ill. Modine and Rohm & Haas operate factories near McCullom Lake Village.

Modine and the plaintiffs ask the court to approve a proposed settlement recognizing a medical monitoring class and a property damage class. The agreement provides $1.4 million for medical monitoring of class members. Each claimant may seek a maximum of $1,400 for medical screening. Medical screening is to be completed within six months of final approval of the settlement.

The agreement sets aside $100,000 for property damage claims. Members of the class are described as real property owners of record between April 25, 2006, and the final approval of the settlement. Each property is eligible for one payment to be shared among all the owners.

Class Representatives

Glenn and Donna Gates are appointed class representatives for the medical monitoring and property damage classes. Class counsel is Aaron J. Freiwald of Layser & Freiwald in Philadelphia.

Friewald represents the plaintiffs. Albert G. Bixler of Eckert, Seamans, Cherin & Mellot in Philadelphia and David Bartel of Quarles & Bartel in Milwaukee represent Modine.

Mealey's Emerging Toxic Torts February 5, 2008

Contact Mealey's at 1-800-MEALEYS and see today's headlines at www.lexis.com/legalnews. To see if there is a Mealey's Conference on this topic or an online CLE session, please visit: http://www.mealeys.com/conferences.html.

**LOAD-DATE:** February 05, 2008

# EXHIBIT 5

**Westlaw.**

Slip Copy                                                                                                      Page 1
Slip Copy, 2007 WL 2827808 (S.D.N.Y.)
**(Cite as: 2007 WL 2827808 (S.D.N.Y.))**

**C**Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Daniel L. BROOK, M.D., Scot Bradley Glasberg,
M.D. Nestor D. Blyznak, M.D.,
Eric N. Dubrow, M.D., Bryan T. Hanypsiak, M.D.,
Richard D. Hindes, M.D., Neil
J. Kurtz, M.D., Jeffrey S. Muhlrad, M.D., Douglas
M. Petraco, M.D., Steven M.
Poupolo, M.D., Philip L. Schrank, M.D. and Medical
Society of State of New
York, Plaintiffs,
v.
UNITEDHEALTH GROUP INCORPORATED,
United Healthcare Insurance Company,
UnitedHealthcare of New York, Inc., Oxford Health
Plans (N.Y.), Inc. and Oxford
Health Insurance, Inc., Defendants.
**No. 06 CV 12954(GBD).**

Sept. 27, 2007.

*MEMORANDUM DECISION AND ORDER*

GEORGE B. DANIELS, District Judge.

*1 In a class action, *inter alia,* for unlawful and
deceptive business practices, plaintiffs are moving,
pursuant to 28 U.S.C. § 1447(c), to remand this
action to the New York State Supreme Court, and for
an order awarding plaintiffs' costs and expenses
incurred as a result of the defendants' removal of this
action to federal court. The motion is denied.

Plaintiffs are health care providers who commenced
this putative class action in state court. Defendants
are health insurers that contract with physicians to
provide health services to their insureds. Defendant
UnitedHealth Group, Inc. ("United Group") is
allegedly the "ultimate parent business entity" of the
other named defendants, *i.e.,* defendants United
Healthcare Insurance Company ("UHC") and
UnitedHealth Care of New York, Inc. ("United NY")
(collectively "United"), and defendants Oxford
Health Plans (N.Y.), Inc. ("Oxford NY") and Oxford
Health Insurance, Inc. ("Oxford, Inc.") (collectively
"Oxford"). Defendants United NY, Oxford N.Y. and
Oxford Inc. are incorporated in New York, whereas

the remaining two defendants, United Group and
UHC, are neither incorporated nor is their principal
place of business in New York.

Plaintiffs allege that prior to 2004, United and
Oxford were separate health care providers. Plaintiffs
claim that, in 2004, United Group acquired control
over Oxford NY, and made it a subsidiary of United
Group. "The acquisition by United Group of Oxford
N.Y. [allegedly] strengthened United Group's market
participation in the metropolitan New York City,
New Jersey and southern Connecticut regions and
provided substantial distribution opportunities in
these regions for other United Group businesses."
(Compl.¶ 29). The complaint alleges that "[i]n
addition to the plaintiffs named herein, in or about
April 2005, providers for United and Oxford (in
several states) were informed by letter from either
United or Oxford that, despite the fact that United
and Oxford would continue to operate as separate
companies, physicians now have to become an
Oxford provider if they were solely a United
provider, and *vice versa.* Any physician who did not
agree to become a provider for both United and
Oxford would have their provider agreement
terminated." (*Id.* ¶ 55).

Plaintiffs explain that "[t]his requirement is known
in the health care business as an 'all products' clause,
whereby an insurance company requires that a
physician accept all coverage plans the insurance
company offers, regardless of quality." (*Id.* ¶ 56). The
complaint details how plaintiffs contend that the
negative impact of imposing "all products" clauses in
provider contracts have reached far beyond simply
affecting physicians located in New York. Plaintiffs
allege that a number of states have either outlawed or
denounced the practice of using "all products"
clauses. [FN1] Plaintiffs further allege that "[t]he
United States Department of Justice ("DOJ") has also
specifically recognized the harmful impact of 'all
products' clauses." (*Id.* ¶ 60). [FN2]

> FN1. Plaintiffs allege that at least seven
> states have banned the use of "all products"
> clauses, including: Arkansas, Florida,
> Indiana,        Kentucky,        Maryland,
> Massachusetts and Virginia. (*Id.* ¶ 58).
> Additionally,        the        Commissioner        of

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2007 WL 2827808 (S.D.N.Y.)
(Cite as: 2007 WL 2827808 (S.D.N.Y.))

Insurance for Nevada purportedly declared that such clauses "violate[ ] the Unfair Trade Act." (*Id.* ¶ 59). Plaintiffs also claim that an insurance company's use of "all products' clauses resulted in it being charged by the Texas Attorney General with violations of the Texas Deceptive Trade Practice Consumer Act. (*Id.* ¶ 63). Finally, plaintiffs note that "[t]he American Medical Association has also taken a hardline stance against 'all products' clauses' " because of their coercive effect upon physicians. (*Id.* ¶ 64).

FN2. Plaintiffs assert that the DOJ instituted an action, in Texas, against an insurance company charging that its use of "all products" clauses in provider agreements violated federal antitrust law. (*Id.* ¶ 61).

*2 Plaintiffs contend that defendants' actions amount to coercion, illegal tying and boycott, and constitute unfair trade practices that are highly anti-competitive. Plaintiff further alleges that United Group, as the parent company, "provides the business relationship between United and Oxford that assists and promotes the unlawful conduct alleged in this action." (*Id.* ¶ 32). Specifically, plaintiffs claim that "United Group materially aids and assists the scheme, combination, conspiracy, and agreement that plaintiffs are challenging in this action." (*Id.*).

The class action complaint assert seven state and common law causes of action against all the defendants, *to wit*: unfair trade practices; deceptive trade practices; unfair insurance practices; antitrust tying; antitrust boycott; declaratory judgement; and breach of contract. The complaint describes the class of plaintiffs as "all physicians in the State of New York who are or were participating providers of Oxford, or attempted to join Oxford, and have been required to either acquiesce to the United Group/United/Oxford "all products" clause or face denial of access to Oxford altogether, and *vice versa*, at any time from April 1, 2005 through the present." (*Id.* ¶ 65).

The instant case was commenced on September 19, 2006. Approximately thirteen months earlier, on July 29, 2005, plaintiffs' counsel filed a similar class action in Connecticut State court which is presently still pending. [FN3] The Connecticut action is brought "on behalf of all physicians in the State of

Connecticut who are participating providers of UHC, or attempted to join UHC, and have been required to either acquiesce to the United/UHC/Oxford 'all products' clause or face denial of access to UHC altogether at any time from April 1, 2005 through the present." ( *Austrian v. Unitedhealth Group, Inc.,* No. X06-CV-05-4010357-S (Conn.Super.Ct.) Compl. ¶ 53). A significant portion of the complaint at bar is virtually identical to the pleadings set forth in the Connecticut class complaint. The Connecticut plaintiffs have asserted the following claims under Connecticut state law and common law: unfair trade practices; unfair insurance practices; antitrust tying; antitrust boycott; declaratory judgment, breach of contract; and breach of implied covenant of good faith and fair dealing.

FN3. Defendants never sought to remove the Connecticut action to federal court.

The class action at bar was removed from New York State court by defendants based upon the subject matter jurisdiction conferred on the federal district courts pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2). CAFA was enacted to curtail the abuses existing in class action practice by extending federal jurisdiction over interstate class actions of national importance. Pub.L. No. 109-2, § 2(a)(4), 119 Stat 4; *see also, Lowery v. Alabama Power Co.,* 483 F.3d 1184, 1193 (11th Cir.2007) ("Congress enacted CAFA to address inequitable state court treatment of class actions, and to put an end to certain abusive practices by plaintiffs' class counsel.") (*citing* CAFA § 2, 119 Stat. At 5). Generally, CAFA vest the district courts with original jurisdiction of class actions where: (1) the putative class is composed of at least 100 members; (2) any class member is diverse from any defendant; and (3) the aggregate amount in controversy exceeds five million dollars, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2)(A). [FN4]

FN4. CAFA is inapplicable to certain securities actions and actions relating to the internal affairs or governance of a business, nor does it apply where the primary defendants are states or state officials. 28 U.S.C. § 1332(5), (9)(A-C).

*3 The jurisdiction granted to the federal courts, pursuant to CAFA, is not all encompassing. Three enumerated exceptions to the exercise of CAFA jurisdiction exists: the "local controversy" [FN5] and

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Slip Copy, 2007 WL 2827808 (S.D.N.Y.)
(Cite as: 2007 WL 2827808 (S.D.N.Y.))

"home state controversy" [FN6] are mandatory exceptions; whereas the "interests of justice" [FN7] exception is discretionary. The home state and local controversy "exceptions are designed to draw a delicate balance between making a federal forum available to genuinely national litigation and allowing the state courts to retain cases when the controversy is strongly linked to that state." *Hart v. FedEx Ground Package Sys. Inc., 457 F.3d 675, 682 (7th Cir.2006)*. The exceptions are intended "to keep purely local matters and issues of particular state concern in the state courts ..." *Lowery, 483 F.3d at 1193-94*.

> FN5. Under the "local controversy" exception "[a] district court shall decline to exercise jurisdiction ...
> (A) (i) over a class action in which--
> (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
> (II) at least 1 defendant is a defendant--
> (aa) from whom significant relief is sought by members of the plaintiff class;
> (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
> (cc) who is a citizen of the State in which the action was originally filed; and
> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
> (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons[.]
> 28 U.S.C. § 1332(d)(4)(A).

> FN6. The "home state controversy" provides that "[a] district court shall decline to exercise jurisdiction ... over a class action in which--
> (B) two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.
> 28 U.S.C. § 1332(d)(4)(B).

> FN7. The "interests of justice" discretionary exception provides:
> A district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction under [CAFA] over a class action in which the greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed based on consideration of--
> (A) whether the claims asserted involve matters of national or interstate interests;
> (B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;
> (C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;
> (D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;
> (E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and
> (F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

Plaintiffs maintain that the local controversy and the home state controversy exceptions apply, thereby requiring that this action be remanded to state court. Plaintiffs additionally argue, that aside from the statutorily-recognized CAFA exceptions, the matter should be remanded, for policy reasons and in the interest of justice, because local interests predominate this controversy. [FN8] Specifically, they claim that this action pertains both to the practice of medicine which is a local issue, and to the business of insurance which is regulated on a state-by-state basis.

> FN8. Plaintiffs are arguing that the interests of justice, in general, compel this matter

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

being remanded. They are not relying on the specific "interests of justice" CAFA exception enumerated in 28 U.S.C. § 1332(d)(3). Plaintiffs concede that they cannot satisfy the statutory requirements to be eligible for this recognized exception.

Plaintiffs do not contest that defendants met their initial burden of proving subject matter jurisdiction under CAFA. Plaintiffs, however, maintain that defendants have the further burden of disproving the applicability of the CAFA exceptions. The Second Circuit Court of Appeals held that CAFA did not change the traditional rule that the party removing an action to federal court has the burden of establishing federal subject matter jurisdiction. *Blockbuster, Inc. v. Galeno,* 472 F.3d 53, 58 (2d Cir.2006); *DiTolla v. Doral Dental IPA of New York, LLC,* 469 F.3d 271, 275 (2d Cir.2006). The Second Circuit, however, explicitly declined to opine on whether the party "seeking remand bears the burden of establishing that they are eligible for one of CAFA's express exceptions to jurisdiction enumerated at § 1332(d)(3)-(5)[,]" once CAFA jurisdiction has been demonstrated. *Galeno,* 472 F.3d at 58 (citations omitted).

Circuit Courts in other jurisdictions have all concluded that, once CAFA jurisdiction is established, the burden of proof to establish the existence of an exception rests with the party objecting to the court's exercise of jurisdiction. *See, Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.,* 485 F.3d 804, 813 (5th Cir.2007); *Frazier v. Pioneer Americas, LLC,* 455 F.3d 542, 546 (5th Cir.2006); *Hart,* 457 F.3d at 680;*Serrano v. 180 Connect, Inc.,* 478 F.3d 1018, 1021-22 (9th Cir.2007); *Evans v. Walter Indus.,* 449 F.3d 1159, 1164 (11th Cir.2006). The Circuit Courts' reasoning focused primarily on the similar statutory framework shared by CAFA and other removal statutes. It is a well established rule that the party seeking remand bears the burden of proving the applicability of an exception with regard to the general removal statute, *i.e.,* 28 U.S.C. § 1141(a). Since the structure of CAFA is comparable to the general removal statute, it should be interpreted consistently therewith. *Hart,* 457 F.3d at 680-81;*Serrano,* 478 F.3d at 1023-24;*Evans,* 449 F.3d at 1164-65 (The Eleventh Circuit also analogized CAFA with the Federal Deposit Insurance Corporation removal statute, 12 U.S.C. § 1819(b)(2)(B)); *Frazier,* 455 F.3d at 546. Moreover, shifting the burden of proving an exception to the

party seeking remand once the opposing party has established his right to a federal forum is consistent with CAFA's legislative intent to ensure that class actions of interstate or national implications be litigated in federal courts. *Hart,* 457 F.3d at 681;*see also, Mattera v. Clear Channel Commc'ns, Inc.,* 239 F.R.D. 70, 79 (S.D.N.Y.2006). [FN9] Given CAFA's purpose, and given the burdens of proof applicable to the general removal statute where a statutory basis for exercising federal jurisdiction has been shown, the party opposing the exercise of the Court's established jurisdiction bears the burden of demonstrating that a CAFA exception exists. Plaintiffs have failed to meet this burden.

> FN9. Additionally, it has been observed that placing the burden of proof on the party opposing the available exercise of federal jurisdiction is appropriate because the evidence necessary to establish an exception is more likely to be available to that party. *See eg., Evans,* 449 F.3d at 1164 n. 3;*Frazier,* 455 F.3d at 546;*but see, Hart,* 457 F.3d at 680 (Finding "unpersuasive" the availability of evidence reason.); *Serrano,* 478 F.3d at 1024 n. 8 (Noting that the party to whom the necessary evidence to establish an exception is available may vary depending on the nature of the case.)

*4 The local controversy CAFA exception is inapplicable where, *inter alia,* a similar class action asserting the same or similar factual allegations against any of the defendants has been filed within a three-year period immediately preceding the filing of the subject class action. 28 U.S.C. §1332(d)(4)(A)(ii). Plaintiff admits that "[t]he action pending in Connecticut state court is basically the same as this action." (Pls.' Mem. Supp. Remand 10). Plaintiffs, however, argues that, rather than serving as a basis for rendering the local controversy exception inapplicable, the very existence of the Connecticut action itself demonstrates the local nature of the case at bar. Plaintiffs stress that both actions limit the class members to physicians of their respective states. They also argue that neither action seeks relief based upon federal law and only assert claims based upon their respective states.

"CAFA's language favors federal jurisdiction over class actions and CAFA's legislative history suggests that Congress intended the local controversy exception to be a narrow one, with all doubts

Slip Copy, 2007 WL 2827808 (S.D.N.Y.)
(Cite as: 2007 WL 2827808 (S.D.N.Y.))

resolved 'in favor of exercising jurisdiction over the case.' " *Evans,* 449 F.3d at 1163 (quoting S.Rep. No. 109-14 at 42, U.S.Code Cong. & Admin. News 3, 40). The legislative history also notes that one of the common abuses in class action practice is where the original class lawyers file " 'copy cat' class actions (*i.e.,* duplicative class actions asserting similar claims on behalf of essentially the same people)" in different courts. S.Rep. No. 109-14 at 42, U.S.Code Cong. & Admin. News 3, 40 12, 19. "Multiple class action cases purporting to assert the same claims on behalf of the same people often proceed simultaneously in different state courts, causing judicial inefficiencies and promoting collusive activity." S.Rep. No. 109-14 at 42, U.S.Code Cong. &Admin. News 3, 40, 4.

Plaintiffs cannot simply evade federal jurisdiction by defining the putative class on a state-by-state basis, and then proceed to file virtually identical class action complaints in various state courts. Such conduct is precisely what the CAFA legislation was intended to eradicate. As plaintiffs concede, the Connecticut action is essentially the same as the case at bar. Since the Connecticut complaint was filed approximately thirteen months prior to the commencement of the instant action, plaintiffs cannot avail themselves of the local controversy exception which requires that no similar class action be commenced within the immediate preceding three years. *See eg., Caruso v. Allstate Ins. Co.,* 469 F.Supp.2d 364, 370-71 (E.D.La.2007).

Additionally, plaintiffs cannot establish the requisite principal injuries element of the local controversy exception. "[T]he principal injuries suffered by the class must be limited to a particular state; it does not apply to cases in which the defendants engaged in conduct that 'could be alleged to have injured [persons] throughout the country or broadly throughout several states.' " *Mattera,* 239 F.R.D. at 80 (quoting *Kearns v. Ford Motor Co.,* 2005 WL 3967998, at *12 (C.D.Cal. Nov. 21, 2005)). The complaint itself alleges that the adverse effects suffered, as a result of defendants' culpable conduct, was not limited to the named New York plaintiffs but also included health care providers in several other states.

*5 Plaintiffs' reliance on the home state controversy exception is similarly unavailing. A district court is to decline to exercise jurisdiction under this exception where the primary defendants and at least two-thirds of the class members are citizens of the State in

which the action was originally filed. Two of the five named defendants are not New York citizens. Plaintiffs nevertheless stress that "the three New York corporations are the real targets of the lawsuit-- in terms of damages and injunctive relief--and are substantially exposed to the class members." (Pls.' Mem. Supp. Remand 12). While plaintiffs acknowledge that the home state exception in "Section (d)(4)(B) speaks in terms of 'primary defendants,' plaintiffs suggest that the exception applies because the majority balance (sic) of the primary defendants are New York citizens, which when combined with the application of Section (d) (4)(A) [the local controversy exception] and the equities [concerning the local nature of the practice of medicine], should favor remand." (*Id.* at 12).

The term "primary defendants" is not defined in CAFA. The failure to provide a statutory definition was not merely an oversight. CAFA was signed into law in 2005, following seven years of congressional debate. As early as 1999, opponents to CAFA voiced their disapproval of the use of the term "primary defendants" as being too "vague." They maintained that "primary defendants" was a "new and undefined phrase[ ] with no antecedent in the U.S.Code or the case law" and that "[i]t will take many years and conflicting decisions before th [is] critical term[ ] can begin to be sorted out." S. REP. 106-420, September 26, 2000. The final Senate Judiciary Committee's Report was intended to provide "guidance regarding the term 'primary defendants' " to be applied by the courts in evaluating a defendant's status. 2005 U.S.C.C.A.N. at 42. The Report explains that the "Committee intends that 'primary defendants' be interpreted to reach those defendants who are the real 'targets' of the lawsuit--i.e., the defendants that would be expected to incur most of the loss if liability is found. Thus, the term 'primary defendants' should include any person who has substantial exposure to significant portions of the proposed class in the action, particularly any defendant that is allegedly liable to the vast majority of the members of the proposed classes (as opposed to simply a few individual class members)." S.Rep. No. 109-14, at 43, as reprinted in 2005 U.S.C.C.A.N. at 41. The Senate report, however, was issued ten days after CAFA's enactment thereby suggesting it is of minimal value in discerning legislative intent. *Galeno,* 472 F.3d at 58.

In interpreting the meaning of "primary defendants," courts have taken varying approaches leading to

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2007 WL 2827808 (S.D.N.Y.)
(Cite as: 2007 WL 2827808 (S.D.N.Y.))

Page 6

some incongruency. Thus, it has been held that a primary defendant is one: (1) who has the greater liability exposure; (2) is most able to satisfy a potential judgment; (3) is sued directly, as opposed to vicariously, or for indemnification or contribution; (4) is the subject of a significant portion of the claims asserted by plaintiffs; or (5) is the only defendant named in one particular cause of action. *See eg., Kendrick v. Standard Fire Ins. Co.,* 2007 WL 1035018, *5 (E.D.Ky. Mar. 31, 2007)* (liable to the vast majority of class members); *In Matter of Ingram Barge Co.,* 2007 WL 148647, at *2 (E.D.La. Jan. 10, 2007)* (most able to bear potential judgment); *Hangarter v. Paul Revere Life Ins. Co.,* 2006 WL 213834 (N.D.Cal. Jan. 26, 2006)* (only defendant named in one cause of action for injunctive relief, even though he was not named in several other claims seeking monetary relief); [FN10]*Robinson v. Cheetah Transp.,* 2006 WL 3322580, at *2 (W.D.La. Nov. 14, 2006)* (predominance of asserted claims); *Kearns,* 2005 WL 3967998, at *7- 8 (any direct liability).

> FN10. The *Hangarter* dealt with an interpretation of "primary defendants" in regard to a different CAFA provision concerning class actions against state officials.

*6 Ascertaining the definitive meaning of the term "primary defendants" is unnecessary to determine that applicability of the home state controversy exception to the case at bar. Plaintiffs concede that "[a] comparison between the liabilities of these three in-state defendants and the two non-resident defendants reveal no distinction between them--all of plaintiffs' claims are spread equally among all defendants." (Pls.' Mem. Supp. Remand 8). Plaintiffs acknowledge that "[a]ll class members have the same claims against all defendants, as there is no ... subset of defendants." (*Id.*). As a result, plaintiffs are seeking to hold "all defendants [ ] jointly and severally liable." (*Id.*). Since plaintiffs themselves maintain that defendants are each equally culpable and liable for the injuries purportedly suffered by the putative class members, there is no rationale basis upon which to differentiate the defendants' status as being primary or secondary.

Plaintiffs, however, argue that the Court should ignore the "primary defendants citizen" element. Section 1332(d)(4)(B) sets forth the criteria necessary, to fall within the purview of the home

state exception, in clear and unambiguous language. To disregard the statute's plain language based solely on plaintiffs' "suggest[ion]" that, given the nature of this action, a narrow exception to the statutory requirements should be carved out, merits little discussion. " '[W]hen the statute's language is plain, the sole function of the courts--at least where the disposition required by the text is not absurd--is to enforce it according to its terms.' " *Dodd v. United States,* 545 U.S. 353, 359 (2005)* (quoting *Hafford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6 (2000)). The plain language of the home state controversy section demonstrates that Congress intended that the State citizen requirement pertain to all primary defendants. *See, Frazier,* 455 F.3d at 546* (construing a CAFA section similar to the home state section).

Similarly unpersuasive is plaintiffs' argument that the Court should, for both policy and equitable reasons, create an additional CAFA exception which applies where the subject matter of the action relates to a local interest, even though it does not fall within the ambit of the local controversy exception. Plaintiffs argue that the gravamen of the complaint involves both the practice of medicine, which is a local issue, and the insurance business which is regulated by New York State. Clearly the States have a legitimate interest in safeguarding the integrity and ethics of both these professions. Nevertheless, merely because an action involves medical practitioners or a State-regulated industry does not automatically transform it into one pertaining to a uniquely local controversy which effects one particular State, to the exclusion of all others.

Since defendants have established their burden of proving federal jurisdiction under CAFA, and since plaintiffs failed to sustain their burden of proving an exception to the exercise of that jurisdiction exists, plaintiffs' motion to remand and for an award of costs, is denied.

*7 SO ORDERED:

Slip Copy, 2007 WL 2827808 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

# EXHIBIT 6

Westlaw.

Not Reported in F.Supp.2d                                              Page 1
Not Reported in F.Supp.2d, 2006 WL 1004725 (S.D.N.Y.)
(Cite as: 2006 WL 1004725 (S.D.N.Y.))

H Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
In re: METHYL TERTIARY BUTYL ETHER
("MTBE") PRODUCTS LIABILITY LITIGATION
No. 1:00-1898, MDL 1358(SAS), M 21-88.

April 17, 2006.

Aaron M. Zigler, Stephen M. Tillery, Christine
Moody, Korein Tillery, Saint Louis, MO, Scott
Summy, Celeste Evangelesti, Baron & Budd, P.C.,
Dallas, TX, for Plaintiffs.

Robin Greenwald, Robert Gordon, C. Sanders
McNew, Weitz & Luxenberg, P.C., New York, NY,
for Plaintiffs.

John Galvin, Michael Downey, Fox Galvin, LLC, St.
Louis, MO, for Shell Oil Company.

Edward A. Cohen, Roman P. Wuller, Robert J.
Wagner, Thompson Coburn LLP, St. Louis, MO,
Craig H. Zimmerman, McDermott Will & Emery
LLP, Chicago, IL, for Exxon Mobil Corporation.

Peter John Sacripanti, James A. Pardo, Stephen J.
Riccardulli, McDermott, Will & Emery LLP, New
York, NY, for Defendants.

OPINION AND ORDER

SCHEINDLIN, J.

*1 This document relates to: HOWARD GRAHAM
and RHEA MCMANNIS v. SHELL OIL CO. and
EXXON MOBIL CORP., 06 Civ. 1379(SAS)

I. INTRODUCTION

This case is one of dozens in a multi-district
litigation ("MDL"), in which numerous plaintiffs are
seeking relief from contamination, or threatened
contamination, of groundwater from various
defendants' use of the gasoline additive methyl
tertiary butyl ether ("MTBE"). The parties have
already engaged in extensive motion practice, and
familiarity with the Court's previous opinions is

assumed. [FN1] This opinion relates only to *Howard
Graham and Rhea McMannis v. Shell Oil Co. and
Exxon Mobil Corp.*, 06 Civ. 1379 ("*Graham v. Shell*"
).

FN1. *See In re Methyl Tertiary Butyl Ether
("MTBE") Prods. Liab. Litig.*, No. M21-88,
MDL 1358, 2005 WL 3005794 (S.D.N.Y,
Nov. 9, 2005); *In re MTBE Prods. Liab.
Litig.*, 399 F.Supp.2d 340 (S.D.N.Y.2005);
*In re MTBE Prods. Liab. Litig.*, 399
F.Supp.2d 325 (S.D.N.Y.2005); *In re MTBE
Prods. Liab. Litig.*, No. M21-88, MDL
1358, 2005 WL 1529594 (S.D.N.Y,Jun. 28,
2005); *In re MTBE Prods. Liab. Litig.*, No.
M21-88, MDL 1358, 2005 WL 1500893
(S.D.N.Y. Jun. 24, 2005); *In re MTBE
Prods. Liab. Litig.*, 402 F.Supp.2d 434
(S.D.N.Y.2005); *In re MTBE Prods. Liab.
Litig.*, 399 F.Supp.2d 242 (S.D.N.Y.2005);
*In re MTBE Prods. Liab. Litig.*, 233 F.R.D.
133 (S.D.N.Y.2005); *In re MTBE Prods.
Liab. Litig.*, 379 F.Supp.2d 348
(S.D.N.Y.2005); *In re MTBE Prods. Liab.
Litig.*, No. M21-88, MDL 1358, 2005 WL
106936 (S.D.N.Y. Jan. 18, 2005); *In re
MTBE Prods. Liab. Litig.*, No. M21-88,
MDL 1358, 2005 WL 39918 (S.D.N.Y. Jan.
6, 2005); *In re MTBE Prods. Liab. Litig.*,
364 F.Supp.2d 329 (S.D.N.Y.2004); *In re
MTBE Prods. Liab. Litig.*, 361 F.Supp.2d
137 (S.D.N.Y.2004) ("*MTBE VI*"); *In re
MTBE Prods. Liab. Litig.*, 341 F.Supp.2d
386 (S.D.N.Y.2004) ("*MTBE V*"); *In re
MTBE Prods. Liab. Litig.*, 341 F.Supp.2d
351 (S.D.N.Y.2004) ("*MTBE IV*"); *In re
MTBE Prods. Liab. Litig.*, 342 F.Supp.2d
147 (S.D.N.Y.2004) ("*MTBE III*"); *In re
MTBE Prods. Liab. Litig.*, 209 F.R.D. 323
(S.D.N.Y.2002) ( "*MTBE II*"); *In re MTBE
Prods. Liab. Litig.*, 175 F.Supp.2d 593
(S.D.N.Y.2001) ("*MTBE I*").

II. BACKGROUND

In 2000 and 2001, three MTBE lawsuits were filed
in Illinois state court: *England, et al. v. Atlantic
Richfield Co., et al.*, [FN2] *Village of East Alton v.
Premcor Refining Group Inc. et al .*, [FN3] and

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1004725 (S.D.N.Y.)
(Cite as: 2006 WL 1004725 (S.D.N.Y.))

*Misukonis, et al. v. Atlantic Richfield Co., et al.*
[FN4] Defendants timely removed *England* and *Village of East Alton* on the basis of federal question jurisdiction, but they did not remove *Misukonis* from Illinois state court. [FN5]

> FN2. No. 00-L-331 (Ill.3d Cir. Madison Co. Apr. 11, 2000).

> FN3. No. 01-L-1171 (Ill.3d Cir. Madison Co. July 20, 2001).

> FN4. No. 01-L-1472 (Ill.3d Cir. Madison Co. Sept. 20, 2001).

> FN5. On October 16, 2000, after removal, the Judicial Panel on Multidistrict Litigation transferred *England* to this Court for inclusion in *In re MTBE Products Liability Litigation,* pursuant to Rule 7.4 of the Rules of the Judicial Panel on Multidistrict Litigation and 28 U.S.C. § 1407. *See England,* No. 00-370 (S.D.Ill.). *Village of East Alton* was not transferred to this Court and on November 15, 2001, Judge David Herndon, U.S. District Judge for the Southern District of Illinois, remanded *Village of East Alton* to state court. *See Village of East Alton,* No. 01-596 (S .D. Ill.).

*Misukonis* became the instant case. On November 17, 2003, the *Misukonis* plaintiffs filed the Fourth Amended Complaint in Madison County Circuit Court. The *Misukonis* plaintiffs alleged negligence, strict liability for defective product, and conspiracy, and requested a declaratory judgment ordering the action to be maintained as a class action. [FN6] On March 30, 2005, Judge Phillip Kardis of the Third Judicial Circuit Court in Madison County, Illinois approved a stipulated settlement among the named plaintiffs, Frances Misukonis and Frank and Dolores Provaznik, and seven of the nine defendants: Atlantic Richfield Company, BP Corporation North America, Inc., BP Products North America, Inc., CITGO Petroleum Corporation, Chevron U.S.A. Inc., Conoco, Inc., and Phillips Petroleum Company (merged into ConocoPhillips Company) ("settling defendants"). Pursuant to the settlement agreement, the Fourth Amended Complaint was dismissed with prejudice as to the settling defendants, but it remained in effect against Shell Oil Company ("Shell") and Exxon Mobil Corporation ("Exxon").

> FN6. 11/17/03 Fourth Amended Complaint, *Misukonis,* 01-L-1472 (Ill.3d Cir. Madison Co.) ("Fourth Amended Complaint").

On September 14, 2005, the court granted plaintiffs' motion to file a Fifth Amended Complaint, dated August 30, 3005, "instanter." [FN7] The Fifth Amended Complaint substituted the settling plaintiffs with Howard Graham and Rhea McMannis. [FN8] In the new Complaint, plaintiffs alleged negligence and nuisance and sought a declaratory judgment seeking an order that the action be maintained as a class action. [FN9] McMannis alleged that she owns a private well located within 3000 feet of a station owned or controlled by Shell. Graham alleged that he owns a private well that relies on groundwater and is within 3000 feet of a well owned or controlled by Exxon. Both plaintiffs alleged that their wells are at risk of contamination from MTBE and/or tert butyl alcohol ("TBA"). [FN10]

> FN7. *See* 9/14/05 Order, 01-L-1472 (Ill.3d Cir. Madison Co.).

> FN8. Rhea McMannis was a plaintiff in *England.* In 2001, after *England* was transferred to the MDL, tests on water samples from her well failed to show any MTBE contamination and there were no allegations of any known releases of gasoline containing MTBE occurring near her residence. *See MTBE I,* 175 F.Supp.2d at 608. This Court dismissed McMannis from *England* finding that "general allegations concerning the chemical characteristics of MTBE and the widespread MTBE contamination of groundwater throughout the country" were insufficient to establish a "present threat of imminent harm" as to her. *Id.* at 608-10 (also noting that McMannis had not presented statistics of MTBE detection rates for private wells in the county or even state; that Madison County was not a participant in the reformulated gasoline program (a Congressional program whereby gasoline companies were required to sell oxygenated gasoline); and that ethanol was the "primary oxygenate used in the Midwest").

> FN9. 8/30/05 Fifth Amended Complaint,

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1004725 (S.D.N.Y.)
(Cite as: 2006 WL 1004725 (S.D.N.Y.))

Page 3

*Howard Graham and Rhea McMannis v. Shell Oil Co. and Exxon Mobil Corp,* 01-L-1472 (Ill.3d Cir. Madison Co.) ("Fifth Amended Complaint") ¶¶ 33-57.

FN10.*See id.* ¶ 39. TBA is a product resulting from the degradation of MTBE. *See id.* ¶ 11.

*2 Defendants claim that the Fifth Amended Complaint is essentially a new case. They claim that the "new case" is removable on five separate grounds: [FN11] (1) the Class Action Fairness Act of 2005 ("CAFA") which authorizes removal of certain putative class actions; [FN12] (2) the Energy Policy Act of 2005 ("Energy Policy Act"), which allows removal of certain claims related to MTBE; [FN13] (3) diversity jurisdiction; [FN14] (4) federal agent jurisdiction; [FN15] and (5) federal question jurisdiction.[FN16]

FN11.*See* 9/28/05 Notice of Removal, *Graham v. Shell Oil Co.,* No. 05-703 (S.D.Ill.) ("Notice of Removal") ¶¶ 21-86.

FN12.*See*Pub.L. No. 109-2, 119 Stat. 4 (codified in relevant part at 28 U.S.C. § 1332(d) and 1453(b)) (2005).

FN13.*See*Pub.L. No. 109-58, 119 Stat. 594 (codified in scattered sections of 16 U.S.C. and 42 U.S.C.) (2005).

FN14.*See*28 U.S.C. § 1332(a).

FN15.*See*28 U.S.C. § 1442(a)(1) (2006).

FN16.*See*28 U.S.C. § 1331.

III. APPLICABLE LAW

A. Removal and Remand

Section 1447(c) of Title 28 provides: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." When a party challenges the removal of an action from state court, the burden falls on the removing party "to establish its right to a federal forum by 'competent proof.' " [FN17] "In light of the congressional intent to restrict federal court

jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." [FN18] If the removing party cannot establish its right to removal by competent proof, the removal is improper, and the district court must remand the case to the court in which it was filed. [FN19]

FN17.*R.G. Barry Corp. v. Mushroom Makers, Inc.,* 612 F.2d 651, 655 (2d Cir.1979) (quoting *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189 (1936)).

FN18.*Somlyo v. J. Lu-Rob Enters., Inc.,* 932 F.2d 1043, 1046 (2d Cir.1991) (citing *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108 (1941)). *Accord Syngenta Crop Prot., Inc. v. Henson,* 537 U.S. 28, 31 (2002) (noting that "statutory procedures for removal are to be strictly construed").

FN19.*See United Food & Commercial Workers Union, Local 919 v. Centermark Props. Meriden Square,* 30 F.3d 298, 301 (2d Cir.1994) (citing *R.G. Barry Corp.,* 612 F.2d at 655).*See also Klein v. Vision Lab Telecomms., Inc.,* 399 F.Supp.2d 528, 531 (S.D.N.Y.2005); *Kings ChoiceNeckwear, Inc. v. DHL Airways, Inc.,* No. 02 Civ. 9580, 2003 WL 22283814, at *2 (S.D.N.Y. Oct. 2, 2003).

A defendant may remove a civil action filed in state court to federal court if the claims arise under federal law. [FN20] A case arises under federal law when federal law provides for the cause of action, [FN21] or where the state-law claim necessarily raises a "stated federal issue" that is substantial and disputed "which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." [FN22] In determining if this federal claim exists, courts will "examine the 'well-pleaded' allegations of the complaint and ignore potential defenses." [FN23] The presence of a federal defense does not raise a federal question, "even if the defense is anticipated in the plaintiff's complaint, and even if ... the federal defense is the only question truly at issue." [FN24]

FN20.*See*28 U.S.C. § 1441(a) (2006).

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1004725 (S.D.N.Y.)
**(Cite as: 2006 WL 1004725 (S.D.N.Y.))**

FN21.*See Merrell Dow Pharm. Inc. v. Thompson,* 478 U.S. 804, 808 (1986); *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 13 (1983).

FN22.*Grable & Sons Metal Prods., Inc., v. Darue Eng'g & Mfg.,* 545 U.S. 308, 125 S.Ct. 2363, 2368 (2005). *Accord Broder v. Cablevision Sys. Corp.,* 418 F.3d 187 (2d Cir.2005).

FN23.*Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 6 (2003). Two exceptions to the well-pleaded complaint rule permit removal of state law actions: when the claims are completely preempted by federal law and when Congress "expressly [ ] provides" for removal of those claims. *Id.* at 8.

FN24.*Marcus v. AT & T Corp.,* 138 F.3d 46, 53 (2d Cir.1998) (quoting *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 393 (1987)). *Accord City of Rome v. Verizon Commc'ns, Inc.,* 362 F.3d 168, 174 (2d Cir.2004).

"A case is removable when the initial pleading enables the defendant to 'intelligently ascertain' removability from the face of such pleading." [FN25] This standard "does not require a defendant to look beyond the initial pleading for facts giving rise to removability." [FN26] Nor does it require a defendant to "guess" whether the action is removable. [FN27] There is "a judicial reluctance to make jurisdiction hinge on fortuities or *ex parte* tactical moves." [FN28]

FN25.*Whitaker v. American Telecasting, Inc.,* 261 F.3d 196, 206 (2d Cir.2001) (quotation marks omitted).

FN26.*Id.*

FN27.*Richstone v. Chubb Colonial Life Ins.,* 988 F.Supp. 401, 403 (S.D.N.Y.1997) ("A defendant must be able to ascertain easily the necessary facts to support his removal petition. To allow a document with less information to satisfy the statute would require the movant to 'guess' as to an actions' removability, thus encouraging premature, and often unwarranted, removal requests.")

(citations omitted).

FN28.*Murphy v. Kodz,* 351 F.2d 163, 167 (9th Cir.1965) (finding that in a case properly brought in federal court, the "plaintiff's subsequent reduction of his claim to less than the jurisdictional amount" did not "disturb the diversity jurisdiction of a federal court"). *Accord New Jersey Dep't of Envtl. Prot. v. Gloucester Envtl. Mgmt. Serv. Inc.,* 719 F.Supp. 325, 334 (D.N.J.1989) ("If a court dismissed the federal defendant from ... a case [removed pursuant to section 1442(a)(1) ], it must use its discretion to decide whether to remand the remaining ancillary claims to state court or to maintain jurisdiction over those claims.").

## B. Federal Agent Jurisdiction

The federal officer removal statute can override the well-pleaded complaint rule. [FN29] "Suits against federal officers may be removed despite the nonfederal cast of the complaint," but the federal officer's defense must raise an issue of federal law. [FN30] Thus, persons acting under color of any federal office or agency may remove a case to federal court, despite the absence of a federal cause of action, when their removal petition alleges a colorable federal defense and there is a causal nexus between the federal direction and the conduct at issue. [FN31]

FN29.*See Mesa v. California,* 489 U.S. 121, 136 (1989).

FN30.*Jefferson County v. Acker,* 527 U.S. 423, 431 (1999). *Accord Mesa,* 489 U.S. at 133-35;*In re Agent Orange Prod. Liab. Litig.,* 304 F.Supp.2d 442, 446 (E.D.N.Y.2004); 16 James Wm. Moore et al., Moore's Federal Practice ("Moore's"), ¶ 107.15[1][b][ii].

FN31. The requirement for a federal defense is broadly construed; a defense need only be colorable, not clearly sustainable. *See Jefferson County,* 527 U.S. at 431 ("We ... do not require the officer virtually to 'win his case before he can have it removed." ') (citation omitted); *Colorado v. Symes,* 286 U.S. 510, 519 (1932) (where a defendant seeks removal pursuant to the federal officer

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1004725 (S.D.N.Y.)
**(Cite as: 2006 WL 1004725 (S.D.N.Y.))**

Page 5

removal statute, "no determination of fact is required but it must fairly appear from the showing made that [the defendant's removal] claim is not without foundation and is made in good faith").

C. Procedural Requirements for Removal

**\*3** In addition to demonstrating the presence of federal jurisdiction, a defendant must comply with the removal procedures in section 1446 of Title 28. Specifically, section 1446(b) requires a defendant to file a notice of removal thirty days after receiving the initial pleading. [FN32]

> FN32. The statute provides in pertinent part: "[A] notice of removal of a civil action or proceeding shall be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b).

The thirty-day period is strictly construed. [FN33] It is "triggered by formal service" of the summons and complaint. [FN34] The purpose of the thirty-day rule is:

> FN33. See Somlyo, 932 F.2d at 1046 ("federal courts rigorously enforce the statute's thirty-day filing requirement").

> FN34. Whitaker, 261 F.3d at 202 ("the commencement of the removal period [can] only be triggered by formal service of process, regardless of whether the statutory phrase 'or otherwise' hints at some other proper means of receipt of the initial pleading") (citing Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 354-55 (1999)).

"to deprive the defendant of the undeserved tactical advantage that [it] would have if [it] could wait and see how [it] was faring in state court before deciding whether to remove ... and to prevent the delay and waste of resources involved in starting a case over in a second court after significant proceedings ... in the first court." [FN35]

> FN35. Yankee Bank for Fin. & Sav., FSB v.

Hanover Square Assocs.- One Ltd. P'ship, 693 F.Supp. 1400, 1411 (N.D.N.Y.1988) (quoting Wilson v. Intercollegiate (Big Ten) Conference Athletic Assoc., 668 F.2d 962, 965 (7th Cir.1982)).

However, section 1446(b) also states:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. [FN36]

> FN36. 28 U.S.C. § 1446(b) (2006) (emphasis added).

Thus, when a case is removable, but the grounds in the initial complaint are "obscured, omitted, or misstated," a defendant "has thirty days from the revelation of grounds for removal to file a notice of removal." [FN37] This provision preserves the defendant's right to remove a case to federal court upon receiving notice that the case is removable. [FN38] In order to satisfy section 1446(b), a defendant must show (1) that the original complaint was not removable on its face at the time it was filed [FN39] and (2) that another paper changed the status of the case, making it clear that the complaint was removable. [FN40]

> FN37. Moore's ¶ 107.30[3][a][ii]. Accord Lovern v. General Motors Corp., 121 F.3d 160, 162 (4th Cir.1997) ("The statute does not preclude defendants from removing a case where their discovery of the grounds of federal jurisdiction is belated because facts disclosing those grounds were inadequately or mistakenly stated in the complaint.").

> FN38. See Powers v. Chesapeake & Ohio Ry. Co., 169 U.S. 92, 100-01 (1898) (noting that the removal statute permits and requires "the defendant to file a petition for removal as soon as the action assumes the shape of a removable case in the court in which it was brought"); H. Rep. 352, 81st Cong. (1st Sess.1949) reprinted in 1949 U.S.Code & Cong. Serv. at 1254, 1268 (explaining that the addition of the provision allowing removal when the initial pleading does not

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1004725 (S.D.N.Y.)
**(Cite as: 2006 WL 1004725 (S.D.N.Y.))**

state a removable case was meant to codify the finding in *Powers,* 169 U.S. 92, to allow removal of an action *whenever* removability is disclosed).

FN39.*See In re Willis,* 228 F.3d 896, 897 (5th Cir.2000) ("thirty-day period begins running on receipt of complaint only when complaint explicitly discloses [basis for federal jurisdiction]").

FN40.*See*14C Charles Alan Wright, et al., Federal Practice and Procedure § 3733 at 309-10 (1998) (noting that "depositions, answers to interrogatories, and requests for admissions, amendments to ad damnum clauses of the pleadings, and correspondence between the parties and their attorneys or between the attorneys are usually accepted as 'other paper' sources that initiate a new thirty day period of removability," and collecting cases). The phrase "other paper" generally refers to "documents generated within the state court litigation." *Zbranek v. Hofheinz,* 727 F.Supp. 324, 326 (E.D.Tex.1989).

## D. Revival Exception

There is one narrow judicially-created exception to the thirty-day rule, known as the revival exception. [FN41] This exception allows removal after the thirty day period has run where an amended pleading changes the nature of a case so drastically that the amendment "in effect begins a new case." [FN42] A defendant must rely on the revival exception where the complaint was initially removable, making section 1446(b) inapplicable. "The right to revive must be determined in each case with reference to its purposes and those of the 30-day limitation on removal to which it is an exception, and against a background of general considerations relating to the proper allocation of decision-making responsibility between state and federal courts." [FN43]Where the pleading amendments do not change the "target" of a plaintiff's attack, the basic legal theory of the case, or the "nature of the relief sought" there is no revival. [FN44] Thus, where the addition of new parties, the enactment of a new law, or the addition of claims does not change the essential nature of the action, revival is not warranted. [FN45] In contrast, where the newly added claims "bear no resemblance" to the original allegations or the parties are realigned such

that, for example, co-defendants become plaintiffs, a district court may apply the revival exception. [FN46]

FN41.*See Wilson,* 668 F.2d at 965.

FN42.*Id.* at 966.*Accord Johnson v. Heublein Inc.,* 227 F.3d 236, 242 (5th Cir.2000) (upholding district court's decision to deny remand based on the revival doctrine where the allegations contained in the amended complaint bore "no resemblance whatsoever to the allegations of the original complaint [and][t]he parties to the original action [were] now aligned in a completely different manner").

FN43.*Wilson,* 668 F.2d at 965.

FN44.*Id.* at 966.*Accord Casale v. Metropolitan Transp. Auth.,*No. 05 Civ. 4232, 2005 WL 3466405, at *4 (S.D.N.Y. Dec. 19, 2005) (finding that the addition of a claim under 42 U.S.C. § 1983 to a pre-existing claim under Article 78 of New York's Civil Practice Law and Rules did not warrant application of the revival doctrine, where the additional claim rested on the same allegation that defendants had deprived plaintiff of a liberty interest in violation of the Fourteenth Amendment).

FN45.*See, e.g., Louisiana Farm Bureau Cas. Ins. Co. v. Michelin Tire Corp.,* 207 F.Supp.2d 524, 526 (M.D.La.2002) (refusing to apply the revival doctrine after addition of a plaintiff, where the lawsuit still arose from the same "alleged explosion of the Michelin tire and the injuries" suffered by plaintiffs); *Tully v. American Fed. of Gov. Employees Local 3148,* No. 00-7664, 2001 WL 253034, at *2 (E.D.N.Y. Mar. 9, 2001) (finding that where plaintiffs removed a cause of action from the complaint and the "basic legal theory of plaintiff's action--that the defendants failed to adequately represent him in various grievances with his employer" remained the same, application of the revival exception was not warranted); *Camino Camper of San Jose, Inc. v. Winnebago Indus., Inc.,* 715 F.Supp. 964, 965-66 (N.D.Cal.1989) (finding passage of

Not Reported in F.Supp.2d                                                                                    Page 7
Not Reported in F.Supp.2d, 2006 WL 1004725 (S.D.N.Y.)
(Cite as: 2006 WL 1004725 (S.D.N.Y.))

the Judicial Improvements and Access to Justice Act did not revive defendants time to remove); *Clarson v. Southern Gen. Life Ins. Co.*, 694 F.Supp.847 (M.D.Fla.1987) (where substitution of a plaintiff, necessitated by the original plaintiff's death and addition of several causes of action did not change the essential nature of the suit, the amended complaint was "not sufficiently different so that continued litigation in state court would be unjust to defendant, given defendant's voluntary submission to state court jurisdiction" on the earlier complaint); *Frye v. General Fin. Corp.*, 35 B.R. 742 (N.D.Ill.1983) (finding that where plaintiffs added thirty-six named plaintiffs, three defendants, and new allegations of misconduct to their complaint, the revival doctrine was not warranted as the "gravamina" or the "vital essences" of the complaint had not been changed).

FN46.*Heublein Inc.*, 227 F.3d at 242. *But see Rubstello, Inc. v. Transportation Ins. Co.*, No. 05-0688, 2005 WL 1503924, at *4 (E .D. Cal. Jul. 22, 2005) (noting that the "revival exception" has rarely been "used successfully given the stringent qualifications").

E. CAFA and the Energy Policy Act

*4 CAFA authorizes removal of certain putative class actions commenced on or after February 18, 2005. [FN47] A court must look to state law to determine when a lawsuit was initially commenced for purposes of CAFA. [FN48] In Illinois, the Seventh Circuit has explained that, typically, "routine changes in class definitions--the sort that relate back to the original pleading for limitations purposes--do not commence new actions." [FN49]

FN47.*See* 28 U.S.C. § 1332(d) (note on Effective and Applicability Provisions).

FN48.*See Braud v. Transport Serv. Co, of Illinois*, 445 F.3d 801, 2006 WL 880051 (5th Cir. Apr. 6, 2006) (noting that the courts of appeals that have examined this issue have unanimously held that state law determines when an action is commenced for purposes of CAFA).

FN49.*Knudsen v. Liberty Mut. Ins. Co. ("Knudsen II")*, 435 F.3d 755, 757 (7th Cir.2006) (quotations and citations omitted).

As a threshold matter, "[s]ubstitution of unnamed class members for named plaintiffs who fall out of the case because of settlement or other reasons is a common and normally an unexceptional (routine) feature of class action litigation both in the federal courts and in the Illinois courts." [FN50] Prior to class certification, if the named plaintiffs settle, courts will generally allow substitution of new named plaintiffs. [FN51] Courts "disregard the jurisdictional void that is created when the named plaintiffs' claims are dismissed and, shortly afterwards, surrogates step forward to replace the named plaintiffs." [FN52]

FN50.*Phillips v. Ford Motor Co.*, 435 F.3d 785, 787 (7th Cir.2006).

FN51.*See id.*

FN52.*Id.*

Thus, the substitution of named plaintiffs only recommences a case if the amended pleading does not relate back to the earlier complaint. [FN53] "[A] new contention relates back to the original complaint (and hence is not a new claim for relief or cause of action) when the original pleading furnishes the defendant with notice of the events that underlie the new contention." [FN54] "Under Illinois law ... an amendment relates back when it arises out of 'the same transaction or occurrence set up in the original pleading." ' [FN55]

FN53.*See id. See also Plubell v. Merck & Co.*, 434 F.3d 1070(8th Cir.2006) (holding that amended pleading did not "commence" a new action for the purposes of CAFA because the claims did not change and the replacement representative was a member of the putative class in the original pleading).

FN54.*Knudsen II*, 435 F.3d at 757.

FN55.*Phillips*, 435 F.3d at 787 (citing 735 Ill. Comp. Stat. 5/2-616(b) (2005)). *See also Chandler v. Illinois Central R.R.*, 798 N.E.2d 724, 732-33 (Ill.2003) (noting that "a liberal construction of the requirements of

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1004725 (S.D.N.Y.)
(Cite as: 2006 WL 1004725 (S.D.N.Y.))

section 2-616(b) is necessary in order to allow the resolution of litigation on the merits and to avoid elevating questions of form over substance") (quotations and citations omitted); Fed.R.Civ.P. 15(c).

In contrast, where an amendment adds an entirely new defendant, the case may become removable as to that defendant. [FN56] Or, where "a novel claim" is "tacked on" to an existing action, a court may decide that the action has been recommenced. [FN57]

> FN56. *See Knudsen v. Liberty Mut. Ins. Co.* ("*Knudsen I*"), 411 F.3d 805, 807-08 (7th Cir.2005).

> FN57. *Knudsen II*, 435 F.3d at 757. *See also Heaphy v. State Farm Mut. Auto. Ins. Co.,* No. C05-5404, 2005 WL 1950244, at *3-5 (W.D.Wash. Aug. 15, 2005) (removal under CAFA permitted where a new lead plaintiff who was not a member of the prior putative class was added and new causes of action were asserted).

The Energy Policy Act allows removal of "claims and legal actions" filed after August 8, 2005, that allege actual or threatened contamination of MTBE. [FN58] The applicability of this section to amended complaints is an issue of first impression that has not yet been addressed in any court. Nonetheless, the definitions of claim or action are well-established. "[N]ew legal arguments about the same events do not amount to a new claim." [FN59] "One set of facts producing one injury creates one claim for relief, no matter how many laws the deeds violate." [FN60] Thus, the test for whether a new claim or legal action has been filed is similar to the test for whether the case has been re-commenced. Ultimately, the question is whether plaintiffs have pled fundamentally new facts.

> FN58. 42 U.S.C. § 4575 Note.

> FN59. *Brannigan v. United States,* 249 F.3d 584, 588 (7th Cir.2001) ("[I]n both civil and criminal practice it is the underlying events, rather than the legal arguments advanced to obtain relief from those events, that demarcate a 'claim.' ").

> FN60. *N.A.A.C.P. v. American Family Mut.*

*Ins. Co.,* 978 F.2d 287, 292 (7th Cir.1992). Accord *Original Ballet Russe, Ltd. v. Ballet Theatre, Inc.,* 133 F.2d 187, 189 (2d Cir.1943) (noting that a "claim" is used to denote "the aggregate of operative facts that give right to a right enforceable in the courts" and that it replaces the former notion of "cause of action"). *See also* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1324 (3d ed.2004).

## IV. DISCUSSION

Plaintiffs claim that the legal theory of the case has remained unchanged and that defendants' removal is untimely. [FN61] Plaintiffs explain that since it was first filed, this case has been "a suit on behalf of well owners complaining of threatened or actual MTBE contamination," [FN62] and that the Fifth Amended Complaint merely reduced the scope of the action by (1) dismissing the settling defendants, (2) dropping the count for conspiracy, (3) recasting the strict liability claim as a claim for nuisance, and (4) limiting the class to "well owners who were within 3000 feet of service stations owned or operated by defendants." [FN63]

> FN61. *See* Plaintiffs' Memorandum in Support of Remand ("Pl. Mem .") at 6.

> FN62. *Id.* at 8.

> FN63. *Id.*

*5 Defendants oppose remand claiming that plaintiffs "effectively filed a new case," [FN64] because the Fifth Amended Complaint includes new parties, new claims, new proof, and new relief. [FN65] They also argue that the Fifth Amended Complaint does not "relate back" to the original complaint, and for this reason it commenced a " 'new piece of litigation' " for purposes of CAFA and the Energy Policy Act. [FN66]

> FN64. Defendants' Joint Memorandum in Opposition to Plaintiffs' Motion to Remand ("Opp.Mem.") at 2.

> FN65. *Id.*

> FN66. *Id.* at 8 (quoting *Knudsen I,* 411 F.3d at 807).

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1004725 (S.D.N.Y.)
(Cite as: 2006 WL 1004725 (S.D.N.Y.))

Page 9

The originally filed class action, in *Misukonis,* contained allegations of negligence, strict liability for placing MTBE and MTBE-containing gasoline, a defective and/or unreasonably dangerous product, into the stream of commerce, and conspiracy. [FN67] The action was removable when filed. [FN68] Because it was filed in 2001, defendants' removal in 2005 was untimely unless defendants can demonstrate that the Fifth Amended Complaint was effectively a new case thereby permitting removal under either the revival exception, the Energy Policy Act, or CAFA.

> FN67.*See* 9/20/01 Class Action Complaint, *Misukonis,* No. 01-L-1472 (Ill.3d Cir. Madison Co.) ¶¶ 100-219. *Cf.* Class Action Complaint, *England,* No. 00-L-331 (Ill.3d Cir. Madison Co .) ¶¶ 53-75 (also alleging negligence, strict liability for placing MTBE and gasoline containing MTBE into the stream of commerce, and conspiracy).

> FN68.*See In re MTBE Prods. Liab. Litig.,* 399 F.Supp.2d 340 (S . D.N.Y.2005); *MTBE III,* 342 F.Supp.2d at 150 (finding that federal jurisdiction was appropriate over the MTBE cases because "defendants argued that the federal government required them to add MTBE to gasoline" and the use of MTBE was the "conduct upon which plaintiffs' claims [were] based").

A. The Revival Exception

Defendants' assertion that the Fifth Amended Complaint involves new proof, new claims, and new relief is unavailing. Merely naming two new plaintiffs does not restart defendants' removal clock because the essential nature of the case has not changed. [FN69]

> FN69.*See, e.g., Louisiana Farm Bureau Cas. Ins. Co.,* 207 F.Supp.2d at 524;*Frye,* 35 B.R. at 742.

In the Fourth Amended Complaint, plaintiffs' putative class was defined as "[a]ll persons who own real property in the State of Illinois that is not used for commercial purposes upon which a private water supply well exists that provides drinking water." [FN70] The putative class in the Fifth Amended

Complaint is defined as "[a]ll persons who own real property in the State of Illinois that is not used for commercial purposes upon which a private water supply well exists that provides drinking water, and who are within 3000 feet of services stations that are or were owned or operated by Defendants." [FN71] The only difference is that the Fifth Amended Complaint is more specific than the Fourth Amended Complaint.

> FN70. Fourth Amended Complaint ¶ 64.

> FN71. Fifth Amended Complaint ¶ 47.

Defendants concede that Graham and McMannis "were likely members" of the Misukonis-Provaznik class. [FN72] Thus, defendants had notice of any possible risk of contamination claims which could have been made by Graham and McMannis. The fact that defendants may have to conduct a new investigation into potential sources of contamination or risk of contamination focused on the Graham and McMannis wells does not prove that this is a new action. [FN73]

> FN72. Opp. Mem. at 12.

> FN73.*See Schillinger v. Union Pac. R.R. Co.,* 425 F.3d 330, 334 (7th Cir.2005) ("the potential for a larger amount of legal research and discovery in and of itself is not a significant enough step to create new litigation"). Defendants also noted that Rhea McMannis appeared as a plaintiff in *England,* but was dismissed for lack of standing. *See* 3/8/05 Letter from Peter John Sacripanti, counsel for Exxon, to the Court at 1. This fact is irrelevant to the analysis of whether the addition of McMannis to the Fifth Amended Complaint created a new case.

The class allegations in the new complaint are also not substantially different. In the Fourth Amended Complaint, plaintiffs brought the action on behalf of the class to certify and determine (1) whether defendants were negligent by adding MTBE to gasoline distributed in Illinois, (2) whether defendants were negligent in failing to warn plaintiffs of the risks posed by MTBE-containing gasoline, (3) whether MTBE was a defective and/or unreasonably dangerous product at the time defendants placed it

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1004725 (S.D.N.Y.)
**(Cite as: 2006 WL 1004725 (S.D.N.Y.))**

into the stream of commerce in Illinois, and (4) whether defendants conspired to act in concert when they chose to add MTBE to the gasoline. [FN74] The alleged common questions of law or fact in plaintiffs' Fifth Amended Complaint duplicate the first three questions in this list. [FN75] Plaintiffs merely dropped the conspiracy allegations.

FN74.*See* Fourth Amended Complaint ¶ 74.

FN75.*See* Fifth Amended Complaint ¶ 49.

*6 Defendants' argument that the essential focus of the Complaint has changed is also mistaken. Defendants argue that the earlier Complaint focused on product liability and whether gasoline with MTBE was defective, but that the Fifth Amended Complaint focuses only on the localities of the Exxon and Shell service stations. [FN76] This is not the case. The Fourth Amended Complaint alleged claims against particular defendants with service stations in Illinois and thus it focused on fact-specific spill information. [FN77] Moreover, the Fifth Amended Complaint is not focused solely on the localities of the Exxon and Shell service stations. The Fifth Amended Complaint alleges, in language identical to that in the Fourth Amended Complaint, that defendants knew of "MTBE's chemical characteristics that make it virtually certain that if MTBE were released into the environment it would contaminate sources of drinking water to a greater degree than other gasoline constituents" and that "[d]espite this knowledge, defendants misrepresented to the public and the government the true nature of MTBE and negligently elected to promote and market MTBE." [FN78] Thus, the essential nature of plaintiffs' claims remains the same.

FN76.*See* Opp. Mem. at 7.

FN77.*See* Fourth Amended Complaint ¶¶ 4-11.

FN78. Fifth Amended Complaint ¶ 28. *Cf.* Fourth Amended Complaint ¶ 35 (alleging identical claims).

In sum, the Fifth Amended Complaint did not in effect begin a new case. Plaintiffs' effort to recover for MTBE contamination or risk of contamination remained the same in both the Fourth Amended Complaint and the Fifth Amended Complaint.

Defendants acknowledge that both the Fourth and Fifth Amended Complaints sought to "recover for alleged contamination or risk of contamination" to plaintiffs' wells. [FN79] The Fifth Amended Complaint did not change the object of plaintiffs' attack, the legal theory of the case, or the relief sought. [FN80]

FN79. Opp. Mem. at 4-5. Defendants contend that because the plaintiffs' *wells* are different than the previous plaintiffs' wells, this is an effectively new case. *See* Opp. Mem. at 10. Defendants note that they will have to mount a "new investigation" of McMannis and Graham's wells, each of the gasoline stations and other sites that could have served as potential sources for contamination, and "evaluate the regional hydrogeology," files from the Illinois Environmental Protection Agency, and "Illinois private well records and files." Affidavit of Ed Alizadeh, President of Geotechnology, Inc., in support of Defendants' Joint Memorandum in Opposition to Plaintiffs' Motion to Remand at 1. As noted, even additional claims that do not change the underlying theory of the case will not suffice to revive the right to remove.

FN80.*See* *Wilson*, 668 F.2d at 966.

B. CAFA and the Energy Policy Act

For the same reasons, the Fifth Amended Complaint did not commence a new case for purposes of the Energy Policy Act or CAFA. Generally, passage of a new law providing a new basis for removal does not, by itself, revive a defendant's right to remove. [FN81] Defendants do not claim, however, that their right to remove was revived by these statutes. [FN82] Defendants argue instead that the Fifth Amended Complaint re-commenced the action for purposes of CAFA and that claims in the action were newly "filed" for purposes of the Energy Policy Act. [FN83]

FN81.*See, e.g.*, *Camino Camper of San Jose, Inc.*, 715 F.Supp. at 965-66;*Samura v. Kaiser Foundation Health Plan, Inc.*, 715 F.Supp. 970, 972 (N.D.Cal.1989) (new basis for removal under a federal act did not "undo the original waiver" of removal or

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1004725 (S.D.N.Y.)
(Cite as: 2006 WL 1004725 (S.D.N.Y.))

warrant application of the revival exception).

FN82. Even if defendants had made the argument that the passage of CAFA or the Energy Policy Act, without an amendment to the complaint, revived their right to remove, a new removal period would have expired thirty days after the effective date of each Act.

FN83. Nonetheless, defendants recognize that the tests for revival and for whether a case was re-commenced are "essentially the same." Opp. Mem. at 6.

Defendants cannot show that the amendments re-commenced the case. *First,* plaintiffs did not add a new defendant or a novel claim. *Second,* assuming, arguendo, that the substitution of McMannis and Graham as the named plaintiffs would completely alter the facts and issue in the case, defendants cannot show that they lacked notice of the events at issue. Both the Fourth and Fifth Amended Complaints claim that defendants are liable for negligently breaching their duties to "ensure that MTBE, when used as intended, would not pose an unreasonable risk to groundwater from which [p]laintiffs and the Class draw their water." [FN84] Illinois "allows named plaintiffs to be substituted with relation back." [FN85] The Fourth Amended Complaint's class allegations encompassed Graham and McMannis' claims as they were part of the purported class. The fact the named individual plaintiffs changed did not alter the underlying allegations.

FN84.*Compare* Fourth Amended Complaint ¶ 44 *with* Fifth Amended Complaint ¶ 37.

FN85.*Phillips,* 435 F.3d at 788. That the individual facts regarding the newly named plaintiffs may cause new discovery obligations is not sufficient to show that this case has been re-commenced.

*7 Similarly, defendants cannot show that these are newly filed claims for purposes of the Energy Policy Act. Plaintiffs' addition of a nuisance claim did not change the essential factual allegations. This new claim is based on the same factual allegations alleged in the earlier complaints. [FN86]

FN86.*Compare* Fifth Amended Complaint ¶¶ 43-44 ("Defendant, by the wide-scale production, distribution, and use of the chemicals they place and distribute in gasoline, including MTBE and/or TBA, performed in a negligent, reckless, and/or abnormally dangerous manner, has caused contamination of the nation's groundwater supply" and "[p]laintiffs and members of the proposed class have suffered and will suffer damages and injury distinct from these harms to the general public, namely the [p]laintiffs' water supply wells are at risk for MTBE and/or TBA contamination.") *with* Fourth Amended Complaint ¶ 50-51 ("At the time [d]efendants placed MTBE and gasoline containing MTBE into the stream of commerce, it was defective and/or unreasonably dangerous for its intended and foreseeable uses.... As a direct and proximate result of the unreasonably dangerous and/or defective condition of MTBE or gasoline containing MTBE and its introduction into the stream of commerce by [d]efendants, the [p]laintiffs' water supply wells are contaminated or are at risk for MTBE and/or TBA contamination.").

As noted, courts must "construe the removal statute narrowly, resolving any doubts against removability." [FN87] Here, the purposes of the thirty-day limit on removal are well-served by a remand. All defendants but Exxon and Shell settled with the named plaintiffs. This necessitated the substitution of named plaintiffs. Allowing Exxon and Shell an opportunity to remove now would only give them an "undeserved tactical advantage" and unnecessarily prolong these proceedings. [FN88] The Fifth Amended Complaint was removed many years after the action was first filed. It must be remanded as the removal was untimely.

FN87.*Somlyo,* 932 F.2d at 1046 (quotations and citations omitted).

FN88.*Wilson,* 668 F.2d at 965.

C. Plaintiffs' Request for Attorney's Fees

Plaintiffs also seek their costs and attorneys' fees associated with Defendants' removal. [FN89]

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1004725 (S.D.N.Y.)
**(Cite as: 2006 WL 1004725 (S.D.N.Y.))**

Pursuant to 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The purpose of the statute is to prevent "abuse, unnecessary expense, and harassment" as a result of improper removal. [FN90] "Providing for attorneys' fees when granting a motion to remand serves the purpose of deterring improper removal, whereas awarding fees when denying a motion for remand does not." [FN91]

FN89.*See* Plaintiffs' Motion to Remand ¶ 4.

FN90.*Circle Indus. USA, Inc. v. Parke Constr. Group,* 183 F.3d 105, 109 (2d Cir.1999).

FN91.*Id.*

The Supreme Court recently provided guidance for the standard governing application of section 1447(c). In *Martin v. Franklin Capital Corp.,* the Court held that an award of attorneys' fees is a matter of discretion with neither a presumption in favor of or against such an award. [FN92] Instead, the district court must determine whether the removing party lacked an "objectively reasonable basis for seeking removal." [FN93] "The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." [FN94] The Court also noted that "[d]istrict courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case." [FN95]

FN92.*Martin v. Franklin Capital Corp.,* 546 U.S. 132, 126 S.Ct. 704, 710 (Dec. 7, 2005).

FN93.*Id.* at 711.

FN94.*Id.*

FN95.*Id.*

Plaintiffs argue that defendants' removal was "improper and vexatious," as it only served to prolong the litigation. [FN96] Despite the fact that the motion to remand is granted, I find that an award of costs, disbursements, and attorneys' fees would not serve "the purpose of deterring improper removal." [FN97] Defendants did not lack an objectively reasonable basis for seeking removal. Defendants raised colorable issues of law regarding revival and two new federal statutes. Removability is an evolving and difficult field of law. [FN98] Equity does not require an award of costs and expenses under section 1447(c).

FN96. Plaintiffs' Motion to Remand ¶ 5.

FN97.*Circle Indus. USA, Inc.,* 183 F.3d at 109.

FN98.*See Sung ex rel. Lazard Ltd. v. Wasserstein,* 415 F.Supp.2d 393, 398 (S.D.N.Y.2006) (noting that a motion to remand required the court to delve into a "thicket of an oft-visited yet unsettled area of the law"). *See also* Edward M. Spiro, *Removal Jurisdiction--A Continuing Conundrum,* New York Law Journal, Apr. 6, 2006, at 3 (explaining that for defendants seeking to remove, "determining removability can be a tricky business, particularly where there is no explicit federal claim on the face of the state court pleading").

V. CONCLUSION

*8 For the foregoing reasons plaintiffs' motion to remand is granted. The Clerk of the Court is directed to close this motion (06 Civ. 1379: attachment # 29, docket # 2) and this case.

SO ORDERED:

Not Reported in F.Supp.2d, 2006 WL 1004725 (S.D.N.Y.)

END OF DOCUMENT