UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ANDREA SORRENTINO, D'ANGELO and PATRICIA JACKSON, LOUIS APA, STEVEN ANDELMAN, PEEDO and SAIFON PITUK, MANNY DELMAS and BARBARA LINDON, CHANDEEP SODHI, JASPREET SODHI, JACLYN TESORIERO, KIMBERLY CILONE, MARIE VARALLO, and HSIANGCHI HSU, individually and on behalf of themselves and all other persons similarly situated,

       Plaintiffs,

-against-

ASN ROOSEVELT CENTER, LLC d/b/a ARCHSTONE WESTBURY, ARCHSTONE SMITH COMMUNITIES LLC, ARCHSTONE SMITH OPERATING TRUST, JOHN DOE CORPORATION 1 THROUGH X,

       Defendants

Index No.: 08 Civ. 0550
(Spatt, J.)
(Boyle, M.J.)

**ECF CASE**

---

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

          LOWEY DANNENBERG COHEN & HART, P.C.
          Richard W. Cohen (RC-5220)
          Jeanne D'Esposito (JD-5843)
          Scott V. Papp (SP-6005)
          White Plaints Plaza
          One North Broadway, Suite 509
          White Plains, NY 10601
          Tel.: (914) 997-0500
          Fax: (914) 997-0035

          *Attorneys for Plaintiff Andrea Sorrentino*

# Table of Contents

**Page**

Table of Authorities ................................................................. ii

I. INTRODUCTION .................................................................. 1

II. RELEVANT FACTS ............................................................... 1

III. ARGUMENT ..................................................................... 3

    A. Standards for Motion to Dismiss ............................................. 3

    B. The Fourth Cause of Action, For Medical
       Monitoring, Should Not Be Dismissed ........................................ 3

       1. New York Courts Have Recognized the
          Viability of Medical Monitoring Claims ................................. 3

       2. The Elements of A Cause of Action For Medical Monitoring ................. 5

          (a) The Complaint Adequately Pleads Plaintiffs'
             Exposure to Mold and Plaintiffs' Resulting
             Rational Apprehension of Contracting Further Disease .................. 6

    C. The Amended Complaint Adequately Pleads a Claim
       Under Section 349 of N.Y. General Business Law ............................. 8

       1. Elements of GBL § 349 ................................................. 8

          a. Plaintiffs Have Alleged Consumer-Oriented Activity .................... 8

          b. There is No Heightened Pleading Standard
             For Claims Under Section 349 ........................................ 10

       2. Plaintiffs Have Alleged Sufficient Factual Detail
          to Support their Section 349 Claims ...................................... 11

CONCLUSION ...................................................................... 13

## Table of Authorities

**Cases**

*23 Realty Associates v. Teigman,*
   213 A.D.2d 306, 624 N.Y.S.2d 155 (1st Dept. 1995) .......................... 8

*Abbatiello v. Monanto Co.,*
   522 F. Supp.2d 524 (S.D.N.Y. 2007) ...................................... 4

*Abusio v. Consolidated Edison,*
   238 A.D.2d 454 (2nd Dep't 1997) ........................................ 5

*Acevedo v. Consolidated Edison,*
   189 A.D.2d 497 (1st Dep't 1993) ........................................ 5

*Allen v. General Electric Corp.,*
   32 A.D.3d 1163, 1164 (4th Dep't 2006) ................................. 4-5

*Askey v. Occidential Chemical Corp.,*
   102 A.D.2d 130 (4th Dep't 1984) ........................................ 4

*Banks v Consumer Home Mortg.,*
   2003 WL 21251584 (E.D.N.Y Mar. 28, 2003) ......................... 9, 11, 12

*Bartolomeo v. Runco,*
   616 N.Y.S.2d 695 (N.Y. City Ct. 1994) .................................. 9

*Dangler v. Town of Whitestone,*
   241 A.D. 2d 290 (4th Dep't 1998) ....................................... 5

*Eternity Global Master Fund Ltd. v. Morgan Guarantee Trust Co. of N.Y.,*
   375 F.3d 168 (2d Cir. 2004) ............................................ 7

*Frazier v. Priest,*
   141 Misc.2d 775, 534 N.Y.S.2d 846 (City Ct. Jefferson Co. 1988) ........ 9

*Gibbs v. E.I. DuPont De Nemours & Co.,*
   876 F. Supp. 475 (W.D.N.Y. 1995) ....................................... 4

*Harary v. Allstate Ins. Co.,*
   983 F. Supp. 95 (E.D.N.Y. 1997) ..................................... 9, 10

*Hedaya Bros., Inc. v. Fed. Ins. Co.,*
   799 F.Supp. 13 (E.D.N.Y.1992) ......................................... 11

*Lava Trading Inc. v. Hartford Fire Ins. Co.*,
    326 F. Supp. 2d 434 (S.D.N.Y. 2004) .................................... 9, 10

*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*,
    507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) ...................... 11

*Lozano v. Grunberg*,
    195 A.D.2d 308, 600 N.Y.S.2d 43 (1st Dept. 1993) ............................ 9

*Meyerson v. Prime Realty Services, LLC*,
    7 Misc.3d 911, 796 N.Y.S.2d 848 (Sup. Ct. NY County 2005) ............... 9, 12

*New York Univ. v. Continental Ins. Co.*,
    87 N.Y.2d 308, 639 N.Y.S.2d 283 (1995) .................................... 9

*New York v. Feldman*,
    210 F. Supp. 2d 294 (S.D.N.Y 2002) ....................................... 8

*Nichols v. Washington Mutual Bank*,
    2007 WL 4198252 (E.D.N.Y. Nov. 21, 2007) ............................... 7

*Osarczuk v. Associated Universities, Inc.*,
    36 A.D. 3d 872 (2nd Dep't 2007) ......................................... 3

*Oswego Laborors' Local 214 Pension Fund v. Marine Midland*,
    85 N.Y.2d 20, 647 N.E.2d 741, 623 N.Y.S.2d 529 (1995) ................... 8, 12

*Pelman ex rel. Pelman v. McDonald's Corp.*,
    396 F.3d 508 (2nd Cir. 2005) ......................................... 11, 12

*Schmidt v. Merchants Desp. Transp. Co.*,
    270 N.Y. 287 (1938) .................................................... 4

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002) .................................................. 3, 11

*Thompson v. Parkchester Apartments Co.*,
    271 A.D.2d 311, 706 N.Y.S.2d 637 (1st Dep't 2000) ........................ 10

*Vitolo v. Mentor H/S, Inc.*,
    426 F.Supp.2d 28 (E.D.N.Y. 2006) ........................................ 9

**Statutes**

28 U.S.C. § 1332 .................................................... 3

Fed. R .Civ. P. 8(a) ................................................. 11

Fed. R. Civ. P. 12(b)(6) .............................................. 3

N.Y. Gen. Bus. Law § 349 ............................................ 2

# I. INTRODUCTION

Plaintiffs submit this memorandum of law in opposition to the Motion to Dismiss (Dkt. No. 7) of Defendants ASN Roosevelt Center, LLC d/b/a Archstone Westbury (n/k/a Tishman-Speyer Archstone-Smith Westbury, L.P.) ("Westbury"), Archstone-Smith Operating Trust (n/k/a Archstone) ("Smith") and Archstone Communities LLC (n/k/a Archstone-Smith Communities LLC) ("Communities") (Westbury, Smith, and Communities are hereafter referred to collectively as "Archstone Westbury" or "Defendants"). The Motion seeks dismissal of the fourth and fifth causes of action of Plaintiffs' January 7, 2008 Amended Complaint, which asserts claims for medical monitoring and violations of New York General Business Law §349. Defendants have not moved to dismiss the Amended Complaint's first, second, or third causes of action.

For the reasons discussed below, the Motion should be denied.

# II. RELEVANT FACTS

By letter dated November 2007, every tenant of the 21 building, 400 unit luxury apartment complex located at 1299 Corporate Road, Westbury, New York (the "Archstone Complex") was notified by the landlord, Westbury, that due to the "catastrophic damage" at Archstone Complex in the form of severe water intrusion and the confirmed presence of mold in the spaces between the buildings' interior and exterior walls, Westbury would terminate all tenants' leases and require them to vacate their homes by no later than March 31, 2008 (Amended Complaint at ¶ 38-40). *See*, November 2007 letter attached to Dkt. No. 1 as Attachment 7. Westbury informed the tenants that their mass eviction was necessary to permit significant reconstruction that could not occur while the buildings were occupied. Amended Complaint at ¶¶ 38-40.

Plaintiff Andrea Sorrentino ("Sorrentino"), a tenant of the Archstone Complex, filed a class action complaint in State Supreme Court in Nassau County, New York, on November 28, 2007, naming Westbury as the sole defendant. Sorrentino sued on behalf of herself and all present and former Archstone Complex tenants (the "Original Complaint"). Sorrentino's complaint asserted five causes of action for (1) negligence, (2) breach of covenant of quiet enjoyment, (3) breach of implied warranty of habitability, (4) unjust enrichment, and (5) medical monitoring. *See* Original Complaint, Ex. 7 to the Declaration of Jennifer L. Noe, executed on February 8, 2008, attached to the Notice of Removal, Dkt. No. 1 ("First Noe Declaration").

On December 17, 2007, Westbury moved to dismiss the Original Complaint, asserting, *inter alia*, that Sorrentino lacked standing or was otherwise an inadequate class representative to prosecute certain claims for certain other Archstone Complex tenants. *See* Ex. 7 to the First Noe Declaration.

On January 7, 2008, Sorrentino amended her class action complaint (the "Amended Complaint"). *See* Ex. 1 to the Noe Declaration, executed February 15, 2008, attached to Defendants' Motion To Dismiss, Dkt. No. 4 ("Second Noe Declaration"). The Amended Complaint added 14 plaintiffs (collectively, with Sorrentino, the "Plaintiffs"), and Smith and Communities as additional defendants. The Amended Complaint did not plead a cause of action for unjust enrichment, but did plead an additional cause of action under Section 349 of New York's General Business Law.

On February 8, 2008, Smith and Communities filed a Notice of Removal ("Removal Notice"), removing this action to this Court. (*See* Dkt. No. 1.)

On February 15, 2008, Defendants filed the instant motion seeking to dismiss the Amended Complaint's Fourth Cause of Action (medical monitoring) and Fifth Cause of Action

(violation of N.Y. Gen. Bus. Law § 349) pursuant to Fed. R. Civ. P. 12(b)(6). *See* Dkt. Nos. 4 and 5.

On March 13, 2008, Plaintiffs filed a motion to remand this action to state court on the grounds that the Court lacks subject matter jurisdiction, or in the alternative, that the action should be remanded under the mandatory "local controversy" or "home state" exceptions and/or the "discretionary" exception to the Class Action Fairness Act. 28 U.S.C. § 1332. Dkt. No. 13. On March 25, 2008, Smith and Communities filed a brief and affidavit in opposition to the motion for remand. Dkt. Nos. 19 and 20; Plaintiffs' Reply is due April 1, 2008. That motion is currently pending before this court. This memorandum of law is filed without waiver of any application in the motion to remand.

### III. ARGUMENT

#### A. Standards for Motion to Dismiss

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-513 (2002), and must draw all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

#### B. The Fourth Cause of Action, For Medical Monitoring, Should Not Be Dismissed

##### 1. New York Courts Have Recognized the Viability of Medical Monitoring Claims

New York courts recognize the validity of a claim for medical monitoring as an independent cause of action, as an element of consequential damages, or as a remedy. *See*

*Osarczuk v. Associated Universities, Inc.*, 36 A.D. 3d 872, 877 (2nd Dep't 2007) (reversing the trial court's dismissal by summary judgment of "the cause of action seeking medical monitoring and other injunctive relief asserted on behalf of a putative class of persons living within 10 miles of "defendant's nuclear laboratory facility); *Allen v. General Electric Corp.*, 32 A.D.3d 1163, 1164 (4th Dep't 2006) (reinstating "claims" for medical monitoring costs asserted by 30 individuals who were allegedly exposed to the defendants' discharge of toxic chemicals into the environment, "28 of whom . . . exhibit no present injury or illness as a result of that exposure."); *Askey v. Occidential Chemical Corp.*, 102 A.D.2d 130, 135 (4th Dep't 1984) (reversing the dismissal of the medical monitoring claims of a putative class, because "there is a basis in law to sustain to a claim for medical monitoring as an element of consequential damages"). The *Askey* court relied on the New York Court of Appeals decision in *Schmidt v. Merchants Desp. Transp. Co.*, 270 N.Y. 287 (1938), in holding that "a plaintiff has a cause of action immediately upon exposure to a foreign substance. . . . even though at the time the action is commenced no serious damage to the plaintiff has developed." *Askey*, 102 A.D.2d at 247.

Federal district courts have also recognized medical monitoring as an independent cause of action under New York law and have predicted that the New York Court of Appeals would do the same. *See Abbatiello v. Monanto Co.*, 522 F. Supp.2d 524, 538 (S.D.N.Y. 2007) (in cases involving exposure to toxic materials "the New York Court of Appeals would recognize an independent cause of action for medical monitoring"), *citing Allen* and *Askey*; *see also Gibbs v. E.I. DuPont De Nemours & Co.*, 876 F.Supp. 475, 479 (W.D.N.Y. 1995) (recognizing medical monitoring as a cause of action under New York law).

Defendants argue that since the New York Court of Appeals has not yet specifically ruled on the viability of a medical monitoring claim as an "independent cause of action," this Court should ignore this substantial body of authority.

Defendants rely principally on the decision in *Askey,* which recognized that there is a basis in law to sustain a claim for medical monitoring, but denied class certification due to the lack of proof of the nature and extent of contamination and the impossibility of identifying a class of individuals exposed to a contaminated landfill over a 30 year time frame. However, this is a motion to dismiss, not a motion for class certification, and the facts of *Askey* are a far cry from those present here, where there is an easily identifiable and finite class (*i.e.*, Archstone Complex tenants) who were exposed to the catastrophic damage admittedly present at the Archstone Complex over a limited period of time.

Other cases cited by Defendants also support medical monitoring as a viable cause of action under New York law. *See, Dangler v. Town of Whitestone,* 241 A.D. 2d 290 (4th Dep't 1998) and *Abusio v. Consolidated Edison,* 238 A.D.2d 454 (2nd Dep't 1997), where the courts recognized medical monitoring (a/k/a "cancerphobia") as a cause of action." *See Dangler* 241 A.D. 2d at 293-94; *Abusio* 238 A.D.2d at 444.

Defendants' citation to *Acevedo v. Consolidated Edison,* 189 A.D.2d 497 (1st Dep't 1993), is inapposite. There, in an employee/employer dispute involving workers compensation claims, the court simply held that medical monitoring damages could not be recovered by employees outside the context of workers compensation laws.

### 2. The Elements of A Cause of Action For Medical Monitoring

To plead a claim for medical monitoring under New York law, a plaintiff must allege that (1) "he or she was in fact exposed to the disease-causing agent" and (2) "there is a rational basis

for his or her fear of contracting the disease." *See, e.g., Allen v. General Electric Corp*, 32 A.D.3d at 1165.

        a.    **The Complaint Adequately Pleads Plaintiffs' Exposure to Mold and Plaintiffs' Resulting <u>Rational Apprehension of Contracting Further Disease</u>**

The Complaint alleges that Westbury's own investigator determined that <u>at least</u> 30-40 apartments still occupied at January 7, 2008, the date of the Amended Complaint, contained mold requiring <u>immediate</u> remediation (Amended Complaint at ¶ 43)), and all Plaintiffs were exposed to hazardous bacteria and mold conditions prior and/or subsequent to the November 2007 notification from Westbury of damage to their homes that was, by Defendants' own admission, "catastrophic." The Amended Complaint alleges that Plaintiffs:

- "[were] "exposed to hazardous bacteria and mold conditions" while living at the Archstone Complex (Amended Complaint at ¶ 2), which placed Plaintiffs in "reasonable apprehension" of developing serious illnesses in the future. (Amended Complaint at ¶¶ 2, 62, 63);

- "[were] exposed to waterborne bacteria and mold" (Amended Complaint ¶ 2);

- have incurred and will continue to incur costs associated with preventive medical [care] for related illnesses due to their exposure to mold (Amended Complaint at ¶ 47);

- due to their "potential exposure to toxic mold" caused by Archstone Westbury's negligence, plaintiffs will need to secure "ongoing diagnostic, curative, and preventive medical care" (Amended Complaint at ¶ 63).

Plaintiffs have adequately pleaded a "rational basis" for their fear of a latent illness, which is their exposure to the admitted (by Westbury) results of "catastrophic" water damage including mold infestation and elevated levels of bacteria existing at the Archstone Complex. (Amended Complaint at ¶¶ 47, 59, 62, 63; *see also* November 2007 Letter, attached to Dkt. No. 1 at Attachment 7).

Defendants argue that Plaintiffs have not pleaded actual exposure (*see* Defs. Br. at p. 6), by pointing to one allegation contained in the Amended Complaint that Plaintiffs had "potential exposure" to toxic mold. *See* Amended Complaint at ¶ 63. This ignores the allegations elsewhere in the Amended Complaint that Plaintiffs were exposed to hazardous bacteria and mold at the Archstone Complex. *See* Amended Complaint at ¶ 2 (Plaintiffs were "exposed to hazardous bacteria and mold conditions" and "[T]here is substantial evidence of mold and water damage on the common hallway ceilings and stairwells of virtually every building in the complex"). Moreover, by Westbury's own admission, there is "catastrophic damage" to the Archstone Complex of such severity that it requires the reconstruction of all 21 building and wholesale eviction of all tenants. *See* Amended Complaint at ¶ 38; *see also* November 2007 Letter).

Defendants also argue that since the Amended Complaint does not identify what physical condition Plaintiffs believe their "rational basis" for fearing latent illnesses is based on, the Amended Complaint cannot, therefore, state a *prima facie* case for medical monitoring. The Amended Complaint, however, alleges that some Plaintiffs and class members had already experienced illness which might be attributable to the mold and water-borne bacteria at the Archstone Complex (¶¶ 2, 41); that mold is a "serious health hazard" (¶ 40); and that the mold could remain embedded in their personal property even after they move (¶ 47). The Amended Complaint also alleges that the health threat was sufficiently grave to lead Archstone Westbury to evict all tenants and virtually bulldoze the premises. Amended Complaint at ¶¶ 38-45. these allegations give Defendants ample notice of Plaintiffs' claims, which is all that is required at the pleadings stage. The purpose of a motion to dismiss is to test whether the complaint gives defendants fair notice of the claims against which it must defend, *Nichols v. Washington Mutual*

*Bank*, 2007 WL 4198252 at *2-3 (E.D.N.Y. Nov. 21, 2007), not to "assay the weight of the evidence which might be offered in support thereof." *Eternity Global Master Fund Ltd. v. Morgan Guarantee Trust Co. of N.Y.*, 375 F.3d 168, 176 (2d Cir. 2004).

### C. The Amended Complaint Adequately Pleads a Claim Under Section 349 of N.Y. General Business Law

#### 1. Elements of GBL § 349

To plead a cause of action under New York State General Business Law § 349 ("Section 349") a complaint must allege: (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Banks v. Consumer Home Mortg.*, 2003 WL 21251584 (E.D.N.Y. Mar. 28, 2003) citing *Maurizio v. Goldsmith,* 230 F.3d 518, 521 (2d Cir. 2000). Defendants' motion argues that (a) the Complaint does not allege "consumer-oriented" acts and (b) the Complaint fails to plead the GBL § 349 claim with sufficient specificity. Both arguments are wrong.

##### a. Plaintiffs Have Alleged Consumer-Oriented Activity

The Amended Complaint alleges that, for more than two years, Defendants executed hundreds of leases with tenants at the Archstone Westbury complex without disclosing known problems it was experiencing with water intrusion and mold that affected every building in the Complex. Amended Complaint at ¶¶ 35-37, 65-68. This qualifies as consumer-oriented conduct for purposes of GBL § 349.

In *Oswego Laborors' Local 214 Pension Fund v. Marine Midland,* 85 N.Y.2d 20, 647 N.E.2d 741, 623 N.Y.S.2d 529 (1995), the New York Court of Appeals defined "consumer-oriented" to mean conduct that "potentially affects similarly situated consumers." *Id.* at 27, 647 N.E.2d at 745, 623 N.Y.S.2d at 533. The consumer-oriented conduct requirement "has been

construed liberally" and includes any action which causes "consumer injury or harm to the public interest." *New York v. Feldman*, 210 F. Supp. 2d 294 (S.D.N.Y 2002) .

Case law demonstrates the applicability of Section 349 to the landlord tenant context. *See, e.g., 23 Realty Associates v. Teigman*, 213 A.D.2d 306, 624 N.Y.S.2d 155 (1st Dept. 1995) (rental housing is a legitimate area of interest for consumer protection against deceptive advertising and misrepresentation); *Lozano v. Grunberg*, 195 A.D.2d 308, 600 N.Y.S.2d 43 (1st Dept. 1993)( tenant stated claim under GBL § 349, based on landlord's issuance of deceptive dispossess notices based on late rent payments); *Bartolomeo v. Runco*, 616 N.Y.S.2d 695 (N.Y. City Ct. 1994) (finding landlord liable under GBL § 349 for misrepresenting to tenant that cellar apartment was a legal apartment); *Meyerson v. Prime Realty Services, LLC*, 7 Misc.3d 911, 796 N.Y.S.2d 848 (Sup. Ct. NY County 2005) ("[G]enerally claims involving residential rental units are a type of claim recognized under the statute."); *Frazier v. Priest,* 141 Misc.2d 775, 534 N.Y.S.2d 846 (City Ct. Jefferson Co. 1988) (GBL § 349 applies to the landlord-tenant relationship); *see also Banks*, 2003 WL 21251584 at *9) ("[I]t is well settled that Section 349 covers real estate transactions.").

Almost every § 349 dismissal decision cited by Defendants concerns disputes over the scope of coverage under insurance contracts between commercial policyholders and underwriters. *See* Defendants Br. at 6-8; *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 639 N.Y.S.2d 283 (1995) ("The case before us involves complex insurance coverage and proof of loss in which each side was knowledgeable and received expert representation and advice."); *Lava Trading Inc. v. Hartford Fire Ins. Co.*, 326 F. Supp. 2d 434, 438 (S.D.N.Y. 2004) (plaintiff's claim that it was owed $60 million under insurance policy demonstrates that "this was not the 'modest' type of transaction the statute was primarily intended to reach" but rather is a

private contract dispute over policy coverage and the processing of a claim which is unique to these parties, not conduct which affects the consuming public at large."); *Harary v. Allstate Ins. Co.*, 983 F.Supp. 95, 98 (E.D.N.Y. 1997) (Section 349 does not apply to disputes involving sophisticated parties and a large scale insurance contract); *see also Vitolo v. Mentor H/S, Inc.* 426 F.Supp.2d 28, 34 (E.D.N.Y. 2006) (Section 349 does not apply where there was no claim of harm to consumers, only claims of harm by manufacturer to sophisticated business owner).

The Amended Complaint alleges that the Archstone Complex comprised approximately 400 units. Amended Complaint ¶¶ 1, 38. The Complaint alleges that multiple leases were entered into after Westbury became aware of the undisclosed conditions which led to the wholesale eviction of all tenants from all units. Amended Complaint at ¶¶ 35-36. Moreover, Westbury continued to bill rent every month to every tenant in the 400-unit Archstone Complex, without disclosure of the dangerous water and mold conditions. Amended Complaint at ¶¶ 35-36. These allegations make this action easily distinguishable from the *dictum* in the case cited by Defendants regarding the inapplicability of Section 349 to a dispute involving only four condominium purchasers. *Thompson v. Parkchester Apartments Co.*, 271 A.D.2d 311, 706 N.Y.S.2d 637 (1st Dep't 2000).

### b. There is No Heightened Pleading Standard For Claims Under Section 349

Defendants provide no authority which supports their argument that claims under Section 349 "are additionally subjected to a heightened pleading requirement." Defs' Br. at 7. The two cases Defendants have cited do not support this argument (Defs.' Br. at 7-8), because neither case says anything about a "heightened pleading requirement" for Section 349. *See Lava Trading Inc.*, 326 F.Supp.2d 434; *Harary v. Allstate Ins. Co.*, 983 F.Supp. 95. In fact, the Court in *Lava Trading* explicitly acknowledges that there is no heightened pleading requirement. "Section 349

2091 / MOT / 00086033.WPD v10                                10

does not require plaintiff to allege fraud, and therefore the particularity requirements of Rule 9(b), Fed. R. Civ. P., are not triggered." 326 F.Supp.2d at 438.

Indeed, as explained in recent Second Circuit authority, Section 349 claims need meet only the very liberal notice-pleading requirements of Fed. R. Civ. P. 8(a):

> [B]ecause § 349 extends well beyond common-law fraud to cover a broad range of deceptive practices, *see Gaidon*, 94 N.Y.2d at 343, 704 N.Y.S.2d 177, 725 N.E.2d 598, and because a private action under § 349 does not require proof of the same essential elements (such as reliance) as common-law fraud, an action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b), Fed.R.Civ.P., but need only meet the bare-bones notice-pleading requirements of Rule 8(a), Fed.R.Civ.P., *see generally Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

*Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 512 (2nd Cir. 2005)(vacating dismissal of Section 349 claim); *see also, Banks, supra,* 2003 WL 21251584 at *6 (E.D.N.Y Mar. 28, 2003)("[B]ecause Section 349 does not require proof of intent to deceive or justifiable reliance, courts generally hold that Rule 9(b) does not apply to § 349 claims."); *Hedaya Bros., Inc. v. Fed. Ins. Co.,* 799 F.Supp. 13, 15 (E.D.N.Y.1992)(denying motion to dismiss Section 349 claim where "any allegation of fraud made in connection with Hedaya's § 349 claim is surplusage and not subject to review under Rule 9(b)").

### 2. Plaintiffs Have Alleged Sufficient Factual Detail to Support their Section 349 Claims

The Amended Complaint alleges specific facts supporting Plaintiffs' claims that Defendants engaged in consumer-oriented deceptive conduct. A fair reading of the Complaint is that the catastrophic water damage that forced more than 400 Archstone Complex tenants out of their homes did not occur overnight. Yet, as alleged in the Complaint, Westbury actually

renewed tenant leases *less than 2 weeks* before it terminated all leases. Amended Complaint at ¶ 36. The Complaint identifies two other tenants who signed new leases two months before the termination notice. *Id* . The Complaint also alleges that Westbury signed many other new leases and lease renewals at times when Defendants already knew of the water and mold problems but Defendants did not disclose them to the tenants. Amended Complaint at ¶¶ 37, 65-68.

Allegations of such omissions are sufficient to plead claims under Section 349.

> In the case of omissions in particular--the subject of the present case--the statute surely does not require businesses to ascertain consumers' individual needs and guarantee that each consumer has all relevant information specific to its situation. The scenario is quite different, however, where the business alone possesses material information that is relevant to the consumer and fails to provide this information.

*Oswego,* 85 N.Y.2d at 26; *see also, Banks, supra,* 2003 WL 21251584 at *6 (allegation that Defendants failed to disclose conflicts of interest among lawyer and mortgage broker to buyer of property was sufficient to plead a claim under Section 349); *Meyerson, supra,* 796 N.Y.S.2d at 920 ("A deceptive act or practice under the consumer protection statute is a representation or omission likely to mislead a reasonable consumer acting reasonably under the circumstances.") (citations omitted). And even if there were any merit to Defendants' claims that such allegations are insufficient, "the cure for such deficiencies, in a claim not required to be plead with particularity, is a motion for a more definite statement under Rule 12(e), Fed.R.Civ.P., rather than dismissal." *Pelman, supra,* 396 F.3d 508, at fn5.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Defendants' motion to dismiss the Fourth and Fifth Counts of the Amended Complaint be denied in its entirety.

Dated:  April 1, 2008
White Plains, New York

LOWEY DANNENBERG COHEN & HART, P.C.

By: *[signature: Jeanne D'Esposito]*
Richard W. Cohen (RC-5220)
Jeanne D'Esposito (JD-5843)
Scott V. Papp (SP-6005)
White Plains Plaza
One North Broadway, Suite 509
White Plains, NY  10601
Tel.:  (914) 997-0500
Fax:   (914) 997-0035

*Attorneys for Plaintiff Andrea Sorrentino*

## CERTIFICATE OF SERVICE

I certify that I am over eighteen years of age and am not a party to this action. On April 1, 2008, I served a copy of Plaintiffs' Memorandum of Law In Opposition to Defendants' Motion to Dismiss using the CM/ECF system which will send notification of such filing to registered counsel electronically. Pursuant to that notification, a true and correct copy of the foregoing was sent via email to any party or counsel not receiving electronic service from the CM/ECF pursuant to the consent of all parties to this form of service.

Dated:      April 1, 2008
            White Plains, New York

                                                                    _____
                                                                    SCOTT V. PAPP