**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
ANDREA SORRENTINO,
D'ANGELO and PATRICIA JACKSON,
LOUIS APA, STEVEN ANDELMAN,
PEEDO and SAIFON PITUK,
MANNY DELMAS and BARBARA LINDON,
CHANDEEP SODHI, JASPREET SODHI,
JACLYN TESORIERO, KIMBERLY CILONE,
MARIE VARALLO, and HSIANGCHI HSU,
individually and on behalf of themselves and all other
persons similarly situated,

**AMENDED**
**MEMORANDUM OF**
**DECISION AND ORDER**
08CV0550 (ADS)(ETB)

                              Plaintiffs,

              -against-


ASN ROOSEVELT CENTER, LLC d/b/a
ARCHSTONE WESTBURY, ARCHSTONE
SMITH COMMUNITIES LLC, ARCHSTONE
SMITH OPERATING TRUST,
JOHN DOE CORPORATION I THROUGH X

                              Defendants.
-----------------------------------------------------------X

**APPEARANCES:**

**LOWEY DANNENBERG COHEN & HART, P.C.**
Attorneys for the Plaintiffs
One North Broadway, Suite 509
White Plains, NY 10601-2310
        By:    Richard Wolfe Cohen, Esq.
               Jeanne F. D'Esposito, Esq.
               Scott Vincent Papp, Esq., Of Counsel

**WESTERMAN BALL EDERER MILLER & SHARFSTEIN, LLP**
Attorneys for the Defendants
170 Old Country Road, Suite 400
Mineola, NY 11501
        By:    William Edward Vita, Esq.
                Jennifer L. Noe, Esq., Of Counsel

**SHOOK HARDY & BACON, LLP**
Attorneys for the Defendants
600 14th Street, NW Suite 800
Washington, DC 20005
        By:    Peter Strand, Esq.
                David Thorne, Esq.
                Rebecca Schwartz, Esq., Of Counsel

**SPATT, District Judge.**

## I.    <u>BACKGROUND</u>

The following facts are derived from the pleadings and the parties

submissions on the motions.

The plaintiffs in this putative class action are former tenants of a luxury

apartment complex located at 1299 Corporate Drive, Westbury, N.Y. 11590 (the

"Westbury Complex").  On or about November 27, 2008, the tenants were notified

by their landlord, ASN Roosevelt Center, LLC d/b/a Archstone Westbury

("Archstone Westbury"), that they would have to vacate their apartments due to

water intrusion issues at the Westbury Complex.  The tenants were instructed that

their leases would be terminated and they had to vacate the premises no later than

March 31, 2008.  The letter explained that mold had been found in spaces between

the exterior and interior of the wall surfaces and that due to the extensive nature and scope of the work required to be done, the buildings would need to be vacant during reconstruction. The tenants dispute whether the leases were appropriately vacated.

On November 28, 2007, Andrea Sorrentino filed the instant putative class action in New York State Supreme Court, Nassau County on behalf of herself and all present and former Archstone Complex tenants, naming only Archstone Westbury as a defendant. Following a motion to dismiss by the defendants, Sorrentino amended her class action complaint on January 7, 2008, adding fourteen plaintiffs and two Archstone Westbury affiliates as defendants–Archstone Smith Communities LLC and Archstone Smith Operating Trust. In addition, the plaintiffs added claims for medical monitoring and violation of N.Y. Gen. Bus. Law § 349.

Two additional class action cases were filed by residents of the Westbury Complex in state court in December 2007, *Marchese v. ASN Roosevelt Center, LLC,* Index No. 07/021745, and *Francois v. ASN Roosevelt Center, LLC*, Index No. 07/021967. The *Marchese* and *Francois* actions were consolidated in state court and are known jointly as *In re Archstone Westbury Tenant Litigation.* On February 22, 2008, a fourth class action was filed by Jessica Ventimiglia, and others, in New York State Supreme Court, *Ventimiglia v. Tishman Speyer*

*Archstone-Smith Westbury, L.P.*, Index No. 07/021135. ("the *Ventimiglia* Action").

On February 6, 2008, the Honorable Leonard B. Austin granted the plaintiffs' unopposed motion to consolidate this action, *Sorrentino*, with the *Marchese* and *Francois* actions. However, the final order was not entered by the Nassau County Clerk until February 14, 2008 and in the interim, the two newly-named defendants filed a notice of removal to this Court. On March 10, 2008, the plaintiffs moved to remand this action to Supreme Court, Nassau County.

In addition, on March 11, 2008, and April 29, 2008, respectively the defendant Archstone Westbury removed the *Ventimiglia Action* and the *In re Archstone Westbury Tenant Litigation* action to this Court asserting jurisdiction pursuant to the Class Action Fairness Act of 2005.

The *Ventimiglia Action* and the *In re Archstone Westbury Tenant Litigation* actions differ from this action in two important respects. First, this action includes as class members "all tenants who lived at Archstone Westbury pursuant to leases with Defendant on or prior to November 27, 2007 and their successors in interest," whereas the plaintiff classes in the *Ventimiglia Action* and the *In re Archstone Westbury Tenant Litigation* were narrowly structured to include only those persons who (a) are or were residents of the Westbury Complex and (b) were citizens of the State of New York at the commencement of the action. In addition, following the amendment in the *Sorrentino Action*, this case names three separate

defendants, namely Archstone Westbury, Archstone-Smith Operating Trust, and Archstone Communities, LLC.  However, the *Ventimiglia* and *In re Archstone Westbury Tenant Litigation* cases name only Archstone Westbury as a defendant.  These differences create jurisdictional distinctions among the cases.

## II.  DISCUSSION

The defendants removed this action on February 8, 2008, citing 28 U.S.C. § 1332(d) as the basis for federal jurisdiction.  The Class Action Fairness Act of 2005, ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C., including § 1332), expanded federal diversity jurisdiction over state-based class actions.  Enacted on February 18, 2005, the purpose of the CAFA, was to amend the "procedures that apply to consideration of *interstate* class actions to assure fairer outcomes for class member and defendants."  *Id.* (emphasis added).

CAFA vested federal district courts with diversity jurisdiction over class actions where (1) there is minimal diversity, *i.e.*, at least one plaintiff and one defendant are citizens of different states; (2) the proposed class contains at least 100 members; and (3) the amount in controversy is at least $5 million in the aggregate, exclusive of interest and costs.  28 U.S.C. § 1332(d); *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56 (2d Cir. 2006).  The statute further contains a removal provision that allows for any such case filed as a class action in state court to be

removed to federal court. 28 U.S.C. § 1453. "Section 1453 permits a defendant to remove a class action even if a co-defendant is a citizen of the state in which the action was originally brought and without the consent of the other defendants in the action." *Blockbuster*, 472 F.3d at 56.

As both Archstone Smith Communities LLC and Archstone Smith Operating Trust are Colorado entities, the plaintiffs here do not dispute that the minimal diversity requirement is satisfied. In addition, the plaintiffs do not dispute that CAFA's numerosity requirement is satisfied. However, the plaintiffs contend that this action is not subject to federal jurisdiction because the defendants have failed to satisfy the $5 million amount in controversy requirement. In addition, the plaintiffs contend that this action should be remanded to state court under CAFA's local controversy, home state, and discretionary exceptions to federal jurisdiction.

**A.      Burden of Proof**

The Second Circuit has made clear that the party asserting federal jurisdiction under CAFA bears the burden of establishing jurisdiction. *Blockbuster*, 472 F.3d at 57–58; *DiTolla v. Doral Dental IPA of New York, LLC*, 469 F.3d 271, 275 (2d Cir. 2006); *Mattera v. Clear Channel Commc'ns, Inc.*, 239 F.R.D. 70, 78 (S.D.N.Y. 2006). In addition, the Court must construe all ambiguities and draw all reasonable inferences in favor of the party asserting federal jurisdiction. *Mattera*, 239 F.R.D. at 78.

Further, while the Second Circuit has not ruled on the issue, the Court agrees with the weight of authority finding that the party resisting federal jurisdiction pursuant to one of CAFA's exception provisions bears the burden of proving that a CAFA exception applies. *Mattera*, 239 F.R.D. at 79 ("[P]lacing the burden of establishing the applicability of a CAFA exception on the party challenging federal jurisdiction, rather than on the party invoking federal jurisdiction at the outset, better protects against the risk of state courts adjudicating class actions with national ramifications."); *Brook v. UnitedHealth Group Inc.*, No. 06CV12954, 2007 WL 2827808, at *3 (S.D.N.Y. Sept. 27, 2007) ("[T]he party opposing the exercise of the Court's established jurisdiction bears the burden of demonstrating that a CAFA exception exists."); *see also Hart v. FedEx Ground Package System Inc.*, 457 F.3d 675, 681 (7th Cir. 2006).

## B.     Jurisdictional Amount

The removing defendant must show that it appears to a "reasonable probability" that the aggregate claims of the plaintiff class are in excess of $5 million. *Blockbuster*, 472 F.3d at 58; *Kocienda v. U-Haul Intern., Inc.*, No. 07CV0954, 2007 WL 2572269, at *1 (D. Conn. Sept. 4, 2007). Facts relating to the jurisdictional amount can be challenged by the plaintiff, thereby requiring the defendant to support those facts with a "competent proof" by a preponderance of the evidence. *United Food & Commercial Workers Union, Local 919, AFL-CIO v.*

7

*Centermark Props. Meriden Square, Inc.*, 30 F.3d 298, 301–02 (2d Cir. 1994). In determining the amount in controversy, courts first turn to the allegations of the plaintiff's complaint. *See DiTolla*, 469 F.3d at 276; *Koceinda*, 2007 WL 2572269, at *1 ("The Court must evaluate the amount in controversy on the basis of the pleadings viewed at the time of the filing of the notice of removal."). Where "the pleadings themselves are inconclusive as to the amount in controversy . . . federal courts may look outside those pleadings to other evidence in the record."

Here, the plaintiffs' complaint does not make any specific damages demand. Instead, the plaintiffs seek rent abatement for approximately 396 rental units plus monetary damages for personal injury and property damage, including actual damages and medical monitoring. The defendants contend that based upon the monthly rental range from $2000 to $3125 (Amend. Compl. at ¶¶ 3–13), the average monthly rent is $2626. Accordingly, the defendants contend that assuming the plaintiffs seek rent abatement of four months for those 396 units, at least $4.2 million dollars is in controversy in this action. Further, the defendants contend that it is "reasonably probable" that the plaintiffs' remaining claims, including claims for medical monitoring, place an additional $800,000, in controversy.

The defendants reasonably presume that the demanded rent abatement period is four months based upon the time from when tenants were first informed

that they would have to vacate the Westbury Complex on November 27, 2007 until March 31, 2008, the date by which all units had to be emptied. Accordingly, the Court finds with reasonable probability that at least $4.2 million is in controversy based on the plaintiffs' claims for rent abatement alone.

Further, the defendants have established a reasonable probability that even absent the abatement demand, $5 million is in controversy based upon the plaintiffs' remaining claims. The defendants state that when the notice to vacate was initially circulated, there were over one thousand residents of the Westbury Complex. Further, the plaintiffs' complaint seeks "ongoing diagnostic, curative and preventative medical care because of their exposure to toxic mold." (Amend. Compl. ¶ 63). The Court has previously upheld the viability of that claim. The value of such relief, when combined with the plaintiffs' additional claims for property damage; actual or potential personal injury; economic damage caused by defendants' alleged breach of the covenant of quiet enjoyment, breach of the warranty of habitability, and alleged deceptive acts in violation of New York G.B.L. § 349, easily places $5 million in controversy. *See New Haverford P'ship v. Stroot*, 772 A.2d 792, 801 (Del. 2001) (upholding jury award of over $1 million in favor of a single tenant who suffered increased allergy and asthma symptoms and in favor of second tenant who experienced health problems, including frequent headaches and a permanent mold allergy, in the amount of $40,000, as a result of

exposure to mold and bacteria growth in their apartments); *see also* Tamara L.

Boeck & Linda M. Bolduan, *Underlying Exposures in Mold Claims: What Are the*

*Damages: With Mold Litigation Proliferating as the Claimed "Asbestos" of the*

*New Century, it's Time to Examine the Potential Damages and their Viability*, 70

Def. Couns. J. 218, 222 (2003) ("Plaintiffs in mold cases seek recovery for [among

other things] damage to their personal property, including clothing, furniture and

removable appliances.")  Accordingly, the defendants have shown with reasonable

probability that the jurisdictional amount is satisfied.

C.      **CAFA Exceptions**

As stated above, the party resisting federal jurisdiction pursuant to one of

CAFA's exception provisions bears the burden of proving that a CAFA exception

applies.  The plaintiffs contend that even if the jurisdictional amount is satisfied,

this action is simply not the type of national action within the purview of CAFA

and that three CAFA exemptions should apply.

The mandatory exceptions to CAFA jurisdiction "are designed to draw a

delicate balance between making a federal forum available to genuinely national

litigation and allowing the state courts to retain cases when the controversy is

strongly linked to that state."  *Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d

675, 682 (7th Cir. 2006).  In addition, the discretionary exception is designed to

address similar concerns regarding truly "local" controversies in cases where neither mandatory exception applies.

### 1. The Mandatory "Local Controversy" Exception to CAFA Jurisdiction

28 U.S.C. Section 1332(d)(4)(A) provides for an exception to CAFA jurisdiction in matters that are truly "local controversies," where:

> (i)      (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
> (II) at least 1 defendant is a defendant-
> > (aa) from whom significant relief is sought by members of the plaintiff class;
> > (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
> > (cc) who is a citizen of the State in which the action was originally filed; and
>
> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
> (ii)     during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons[.]

28 U.S.C. § 1332(d)(4)(A).

With respect to the threshold citizenship requirement, the Second Circuit has stated that:

> A party's citizenship for purposes of the diversity statute, 28 U.S.C. § 1332 [], is a mixed question of fact and law. The legal components of the question are well established. An individual's citizenship, within the meaning of the diversity statute, is

determined by his domicile. Domicile is "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." At any given time, a person has but one domicile.

*Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000); *see also LoCurto v. LoCurto*, 07CV8238, 2008 WL 4410091, at *3 (S.D.N.Y. Sept. 25, 2008) ("In general, domicile has two components: (1) physical presence in a state, and (2) the intent to make the state a home.").

In support of their position that more than two-thirds (66%) of the class are New York citizens, the plaintiffs submit what they characterize as collected data regarding residences of the named plaintiffs and a large sample of the class as of the date that the action was commenced. The plaintiffs submit an exhibit containing the last known address of class members as of November 26, 2007 and a supplemental list stating certain class members' current addresses. (Papp Decl. Exhs. 2 and 3). On this basis, the plaintiffs assert that as of November 28, 2007, the date the action was filed, 809 of 906 members of the proposed class for whom address information was known were New York residents and as of January 7, 2008, the date the amended complaint was filed, 723 out of 852 members for whom address information was known were residents of New York. Finally, the plaintiffs contend that common sense dictates that it is reasonably likely that more than two-thirds of the putative class members, who were previously living in New York, are citizens of New York.

The defendants contend that the plaintiffs have provided nothing more than merely forwarding addresses left by individuals when they moved out of the Westbury Complex, which, for some, was several years before the institution of the action. According to the defendants, this provides no probative information regarding the present citizenship of the class. In addition, the defendants contend that the plaintiffs' calculations are incorrect because a total of 1,109 individuals were listed in plaintiffs' exhibits 2 and 3 and of those persons 690 either had a New York address as of January 7, 2008, or had a New York address listed as their last known address, amounting to only 62.2% of the potential class.

Thus, the plaintiffs apparently take their sampling from those parties for whom addresses were known, while the defendants take their sampling from the total number of residents. The Court agrees that the plaintiffs' sampling approach is appropriate. However, given the lack of additional information available about the class members, the Court finds that the plaintiffs have not sustained their burden of proving that two-thirds of the class are citizens of New York.

"A court must consider the entire course of a person's conduct in order to determine the relevant intent [regarding domicile]." *Korb v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 03CV10333, 2006 WL 300477, at *1 (S.D.N.Y. Feb. 7, 2006). In determining intent to remain, courts consider such factors as: voting registration and voting practices; the location of real and personal property;

the location where taxes are paid; the location of brokerage and bank accounts; driver's and other licenses; membership in churches, clubs, and associations; whether the person owns or rents his place of residence; and the locations of the person's physician, lawyer, accountant, dentist, or stockbroker. *Id.*; *see also Click Model Management, Inc. v. Rhoda*, 06CV660, 2006 WL 1722578, at *1 (S.D.N.Y. June 22, 2006) (considering the same factors as well as affidavits of intention). Here, while intent could possibly be inferred by the parties who elected a New York residence after leaving the Westbury Complex, no such inference could be made regarding the parties who remained at the Westbury Complex at the time the information was collected.

Simply put, in the absence of the information of the type listed in *Korb*, the Court simply cannot make a determination as to intent of those persons who had not yet vacated the Westbury Complex as of the time that the address information was reported. By the Court's count based upon the residence information provided in plaintiffs' exhibits 2 and 3, of the approximately 870 persons for whom residence in New York is alleged, 370 were still residents at the Westbury Complex without any indication of a future New York residence. Indeed, the only information that the plaintiffs have provided about these persons is that at one time, they maintained apartments in New York. This is insufficient, without more, to show an intent to remain in New York.

14

However, of those 870 people, 379 had indicated a New York address after their residence at Westbury ended.  Accordingly, the plaintiffs have shown that 43.6%, greater than one third, but less than two thirds, of the sample proposed class members are citizens of New York.

### 2. The Mandatory "Home State" Exception to CAFA Jurisdiction

The second mandatory exception, namely the "home state" exception provides that the Court must decline to exercise jurisdiction in cases where: "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed."  28 U.S.C. § 1332(d)(4)(B).  As discussed above, the plaintiffs have failed to prove that two-thirds or more of the members of the proposed class are citizens of New York.  As a result, neither mandatory exception applies and the Court must consider whether the discretionary home state exception applies.

### 3. The Discretionary Exception to CAFA Jurisdiction

The discretionary exception to CAFA jurisdiction provides that:

> A district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction under paragraph (2) over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed based on consideration of--

(A) whether the claims asserted involve matters of national or interstate interest;

(B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;

(C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;

(D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;

(E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and

(F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

28 U.S.C. § 1332(d)(3).

The plaintiffs have established that greater than one-third, but less than two-thirds of the putative class are New York residents. In addition to the citizenship requirements of the class members, the discretionary home state exception applies only where "the primary defendants are citizens of the State in which the action was originally filed . . . ." 28 U.S.C. § 1332(d)(3). In this case, the plaintiffs name as defendants Archstone Westbury; Archstone Smith Communities LLC; Archstone Smith Operating Trust; and John Doe Corporations

16

1 through 10.  The only defendant that the plaintiffs allege to be a citizen of New York is Archstone Westbury.  In a previous decision in the *Ventimiglia* and *In re Archstone Westbury Tenant Litigation* cases, this Court found that Archstone Westbury is a citizen of New York and the Court now affirms that finding.  *See Ventimiglia v. Tishman Speyer Archstone-Smith Westbury, L.P.*, No. 08CV1010, *In re Archstone Westbury Tenant Litigation*, No. 08CV1751, Memorandum Decision and Order, November 28, 2008, at 18.  Therefore, the plaintiffs must show that Archstone Westbury is a primary defendant in this action.

The plaintiffs contend that the primary defendant requirement is met where all of the class members are seeking compensation directly from the local defendant, rather than in a vicarious liability or other secondary capacity.  In addition, the plaintiffs contend that Archstone Westbury has a dominant role in the present controversy because it is listed as the owner of the Westbury Complex on the recorded deed and is the landlord for the Westbury Complex.  Further, the plaintiffs contend that Archstone Westbury is the only defendant that executed the leases with every tenant.

A Senate Report issued after CAFA's enactment attempted to clarify what the term "primary defendant" was intended to mean:

> [The] Committee intends that 'primary defendants' be interpreted to reach those defendants who are the real 'targets' of the lawsuit - i.e., the defendants that would be expected to incur most of the loss if liability is found. Thus, the term 'primary defendants' should

include any person who has substantial exposure to significant portions of the proposed class in the action, particularly any defendant that is allegedly liable to the vast majority of the members of the proposed classes (as opposed to simply a few individual class members).

S. Rep. No. 109-14, at 43, as reprinted in 2005 U.S.C.C.A.N. at 41.

The term "primary defendant" is not expressly defined in the CAFA, and has variably been defined as one: "(1) who has the greater liability exposure; (2) is most able to satisfy a potential judgment; (3) is sued directly, as opposed to vicariously, or for indemnification or contribution; (4) is the subject of a significant portion of the claims asserted by plaintiffs; or (5) is the only defendant named in one particular cause of action." *Brook v. United Health Group Inc*, 2007 WL 2827808, at *5. However, the exception itself applies to "primary defendants," indicating the potential for more than one primary defendant in any given action.

In *Brook*, the court declined to follow the plaintiff's contention that it should ignore the primary defendant element. The Court found that a primary defendant could not be differentiated because "the defendants [were] each equally culpable and liable for the injuries purportedly suffered by the putative class members, [and] there [was] no rationale basis upon which to differentiate the defendants' status as being primary or secondary." *Id.* at *6. Here, however, there is a reasonable basis upon which to differentiate Archstone Westbury from the remaining defendants. Archstone Westbury is the entity that owns the Westbury

18

Complex and entered into the lease agreements with each of the tenants.  Further, Archstone Westbury is the *only* entity named in the related *Ventimiglia* and *In re Archstone Westbury Tenant Litigation* actions.

In addition, Archstone Westbury is sued directly in this action and not in a vicarious capacity.  " Courts that have addressed the issues of primary and secondary defendants in the context of CAFA have defined the term 'primary defendants' as those parties that are directly liable to plaintiffs and secondary defendants as parties joined under theories of vicarious liability or for purposes or contribution or indemnification." *Laws v. Priority Trustee Services of N.C., L.L.C.*, No. 08CV103, 2008 WL 3539512, at *5 (W.D.N.C. Aug. 11, 2008); *accord Anthony v. Small Tube Mfg. Corp.*, 535 F. Supp. 2d 506, 515-16 (E.D. Pa. 2007)*; Kitson v. Bank of Edwardsville*, No. 06CV528, 2006 WL 3392752, at *13-17 (S.D. Ill. Nov. 22, 2006)

A review of the remaining section 1332(d)(3) factors weighs in favor of remand.  The plaintiff need not satisfy all factors, rather a balancing test should be applied taking into consideration the "totality of the circumstances." *See, e.g., Edward & Marjorie Austin Unitrust v. U.S. Mortg. Corp.*, No. 06CV01235, 2007 WL 2886036, at *3 (D. Nev. Sept. 27, 2007)
As to the first two factors, the plaintiffs' claims do not involve matters of national or interstate interest, but are of local interest and are governed by the laws of the

State of New York. In addition, the fourth factor points to remand as the chosen forum, the Nassau County Supreme Court, bears a distinct nexus to the claims of over one thousand former tenants of a multiple building apartment complex located within Nassau County. The fifth factor points to remand because there are more citizens in the State of New York than in any other singular State and the citizenship of the remaining class members is dispersed among several states.

Finally, the Court finds the third and sixth factors to be neutral to the question of proper forum. Aside from seeking relief solely under the laws of New York, the Court finds no basis to conclude that the plaintiffs' class action complaint was pleaded to avoid federal jurisdiction. Further, although other related class actions have been filed against Archstone Westbury, this action was technically the first, and thus the sixth final element is at least neutral if not in favor of remand.

On balance, the Court finds that the discretionary exception to CAFA jurisdiction has been established. Therefore, the proper forum for this action is the New York State Supreme Court. Accordingly, the Court remands this action, to the New York State Supreme Court, County of Nassau, along with the related cases *Ventimiglia*, 08CV1010, and *In re Archstone Westbury Tenant Litigation*, 08CV1751.

### III.    <u>CONCLUSION</u>

For the foregoing reasons it is hereby:

**ORDERED**, that the plaintiff's motion to remand this action to the New

York State Supreme Court, County of Nassau is granted; and it is further

**ORDERED**, that the Clerk of the Court is directed to close the case.

**SO ORDERED.**

Dated: Central Islip, New York
           December 1, 2008

                                            */s/ Arthur D. Spatt*
                                            ARTHUR D. SPATT
                                     United States District Judge